## Hyde and another *v.* The Planters Bank of Mississippi.

The seventh section of the statute of the State of Mississippi, of the 21st February, 1840, which declares that, " it shall not be lawful for any bank in that State to transfer by endorsement, or otherwise, any notes, bills receivable, or other evidence of debt" did not impair any obligation contained in the charter of the Planters Bank of Mississippi, and is not a violation of any prohibition in the constitution of the United States.   *Per Curiam :* The statute does not impair the obligation of any contract existing between the bank and its debtors.   It modifies the capacity of the bank to cede to another the right to inforce such contracts. Nor can the bank be said to have any vested right to make such a transfer, resulting from any contract with the State.   The capacity of contracting is generally within the power of the Legislature, in reference to future contracts ; and remedies may be modified at its will.

A very strong case must be made out, to induce the court to declare a law of a neighboring State unconstitutional, especially when it appears that the purpose of the law was in a great measure remedial.

The court will not, in any case of serious doubt as to the constitutionality of a law, pronounce it void.

No one can be said to have any vested right in any existing legal capacity in refer-

ence to any future contract, or advantage to result from that capacity. The capacity or incapacity of particular classes of persons to contract, or to inherit, depends upon the legislative will.

APPEAL from the District Court of the First District, *Buchanan,* J. The facts of this case are thus stated by

BULLARD, J. The judgment rendered in favor of Hyde & Goodrich against the Planters Bank of Mississippi having been reversed in this court, after a part of the amount claimed had been paid over to them pending the devolutive appeal, and consequently the bank being entitled to restitution, Abm. N. Ogden, their assignee of a balance of about $470, took a rule upon Hyde & Goodrich, to show cause, why an execution should not issue for that amount, for his benefit.

To this rule, after an exception which was overruled, and need be no further noticed, as it appears that all objections to the form of proceeding have been waived, the appellants answered, denying the transfer to Ogden, or that there was any consideration therefor. They plead in compensation bank notes of the Planters Bank amounting to $310, and protested checks to the amount of $171, besides damages and interest, and they allege, that by the laws of the State of Mississippi, the bank could not transfer the claim against them so as to defeat their right to the off-set.

On the trial of the rule, the defendants Hyde & Goodrich produced the checks and notes, which indeed had been filed in court with their answer; but, with respect to the bank notes it was not shown, that the defendants in the rule were the holders of them at the time the notice was given of the transfer. The court allowed the off-set for $171, the amount of the protested checks, and pronounced the statute of Mississippi, upon which the defendants in the rule rely, in support of the plea of the incapacity of the bank to make the transfer, unconstitutional; and Hyde & Goodrich have appealed.

*Peyton* and *I. W. Smith,* for the appellants. The plea of compensation would be good though plaintiffs had acquired the notes after notice of the transfer. Such is the law of Mississippi. See Howard & Hutchinson's Digest, 373, sec. 12; Ibid. 615, sec. 5. Laws of 1840, p. 15, sec. 7. Ibid. p. 21, sec. 2. But it is said, that the laws of 1840 are a violation of the charter, and unconstitutional. It does not appear whether the bank accepted

those laws.  From their words it is obvious, that the Legislature did not consider an acceptance necessary.  A brief review of the history of the charter and of the subsequent legislation will show, that the Legislature have not so far exceeded their powers as to authorize this court to declare their laws a dead letter.

From the charter and amendments it appears that, in 1830, the State created the bank, with a capital of $3,000,000, two-thirds of which the State reserved to itself.  There are thirteen directors, of whom seven were selected by the State.  To furnish the bank with means and credit to go into operation, and carry on its business, the State issued its bonds.  It directed that all sums of money in the State Treasury on account of the three per cent fund, should become part of the capital of the bank ; and that all unexpended moneys in the State treasury, and all moneys collected for State taxes, and all other moneys collected by the State officers, should be deposited in said bank.  It declared, that all the notes of said bank payable on demand, should be receivable in payment of all debts due to the State.  It was thus a bank of the State in the strictest sense of the term, and was also the treasury of the State.

Ten years afterwards, we learn from the laws and resolutions, that the State had fallen into an " embarrassed condition," caused by " excessive banking ;" that honest enterprise had been converted into " a spirit of wild speculation ;" and that " extravagance," "a looseness of morals," and " every species of gambling and over action in every branch of business," had been engendered, and were " the melancholy signs of the present times."  See Laws of Mississippi, for 1840, p. 263.

In one brief week after this solemn legislative declaration of the corruption and fraud of the banks, they passed the first law of the session, having for its object to " require the several banks in this State to pay specie," &c.  The resolutions declared the evil, and the law applied the remedy.  The great object was to provide a remedy for the violation, on the part of the banks, of their promises to pay specie.  This first effort was followed up, in 1844, by another act placing the Planters Bank in liquidation, and making a violation of the law by any of the officers, a felony. The sole object of these laws is to give effect to the charter, not to violate its provisions.  Can it be said that the Legislature of Mississippi have acted in bad faith, and have not disclosed their real motives ?  Or that the Legislature have adopted means so little calculated to effect their purpose, as to authorize this court to pronounce them unconstitutional ?

The only question is, whether the Legislature could, as a rule of proceeding, say to *this* insolvent bank : " You cannot prefer

one creditor to another, in the payment of your debts. All your creditors must share equally in the payments from your property. If you attempt, (as in this case,) to pay one creditor by assigning to him a debt due to the bank, your assignee shall have no greater rights than you had, and all your obligations may be pleaded as a set-off against any claim by you or your assignee." If the Legislature could constitutionally go thus· far, then the plea of compensation in this case cannot be overruled on the ground of unconstitutionality :—See *Union Bank of Tennessee* v. *Ellicott*, 6 Gill & Johnson, 371. *Bank of Maryland* v. *Ruff*, 7 Ib. 465. In the last case cited, the court say, that the question of the constitutionality of the law of Maryland as to the right of off-set, is settled by the affirmative decision of the Supreme Court of the United States.

*T. Slidell*, for Ogden, *contra*. In a case like this, compensation ought not to be admitted. Art. 2207 of the Civil Code declares that compensation takes place, whatever be the causes of either of the debts, except in case—1st of a demand of restitution of a thing of which the *owner has been unjustly deprived, &c.* The Supreme Court having reversed the judgment, under which Hyde & Goodrich obtained this money, they should have immediately paid it back, in specie or its equivalent.

When the assignment was notified to Hyde & Goodrich, they produced as an off-set, the protested drafts of the bank to the amount of $170. No previous tender of them had been made to the bank ; and it is now contended, that compensation, for that amount, had taken effect by the mere operation of law. Such is not the meaning of our code. When compensation takes place by mere operation of law, the two debts are *reciprocally* extinguished; and unless the effect is *reciprocal*, compensation does not take place. In the case of *Fagot* v. *Porche*, 7 La. 564, this court said, that "the absence of all connexion between two demands, is an insurmountable objection to a demand in compensation or reconvention." If the claim of the bank for this money, of which they had been unjustly deprived, was extinguished, *pro tanto*, the moment Hyde & Goodrich came into possession of those drafts, then those drafts, if they had been negotiated by Hyde & Goodrich, would have been dead in the hands of any subsequent holders ; and yet it would seem an extraordinary defence for the bank to set up against such paper, when sued on it, that it had once been held by persons indebted to them, and by that circumstance had been deprived of vitality. It was too late after the assignment by the bank, to offer these drafts in compensation. No compensation could then be pleaded, except such as had been operated by law ;—and the mere possession of negotiable paper

of the creditor, without any tender having been made, cannot be said to have produced the reciprocal extinguishment of the debts.

As to the bank notes pleaded in compensation, the evidence shows that Hyde & Goodrich did not have them when notified of the assignment.

As to the statute of Mississippi prohibiting the transfer by the bank of its assets—it appears by the charter, that the bank was by law clothed with all the rights and privileges of other banking companies; and it is well settled, that the Legislature cannot pass a law destroying or impairing the rights granted by their charters.

This statute was never accepted by the bank; is a violation of its charter; and cannot prevent it from making a valid assignment of its debts.   Story on the Constitution, 261.   To take from a bank the power of disposing of its assets, is practically to arrest all its functions as a bank, and to abolish its banking privileges. Stripped of this power it would cease to be a bank.

If this bank has been improperly managed, and has violated its charter, the remedy is by judicial action, at the suit of the State, to obtain the forfeiture of its charter.   But the Legislature had no authority to assume such violation of its charter or abuse of franchises, and punish the corporation by stripping it of an authority vitally essential to its business, and the purposes of its charter.   See the case of the *Trustees of Dartmouth College* v. *Woodward*, 4 Wheaton's Reports, 518.

BULLARD, J.   The enactment of the Legislature of the State of Mississippi, which the District Court considers as unconstitutional, because it impairs the obligation of a contract, to wit, the charter of the Planters Bank, is contained in " an act, approved on the 21st of February, 1840, entitled an act requiring the several banks in this State to pay specie, and for other purposes."   It is the seventh section, and provides : " That it shall not be lawful for any Bank in this State to transfer, by endorsement or otherwise, any note, bill receivable, *or other evidence of debt;* and if it shall appear in evidence, upon the trial of any action upon any such note, bill receivable, or other evidence of debt, that the same was so transferred, the same shall abate upon the plea of the defendant." Acts of 1840, page 15.

It ought to be premised, that the Planters Bank was a State bank, the State owning one-third of the stock; and the charter pledges the faith of the State to make good all losses which may accrue from a deficiency of the funds of said bank, or by

other means, in proportion to the amount of stock which it holds. That, in common with other persons, natural and artificial, the bank had the authority to transfer *choses in action* as incident to their capacity to contract, is clear; but it failed to redeem its notes in specie; its notes became depreciated, and it incurred the risk, to say the least of it, of forfeiting its charter. It was under these circumstances that the Legislature passed the act containing the above recited provision.

But it is contended, that by the charter of the bank it was authorized to hold and possess real and personal property of every kind, and to sell, alienate, or dispose of the same for the good of the bank, and to do and perform all and singular such matters or things as to them may appear necessary, or which to them may appertain to do as incident to bodies corporate; and that the Legislature could not deprive the institution of any of these powers without a violation of the charter, and thus impairing the obligation of contracts.

It appears to us very clear, that the statute in question has not impaired the obligation of the contract, as between Hyde & Goodrich and the bank. The former are still bound to pay, the latter have still a right to recover. But the law has modified the capacity of the bank to cede to another its right to enforce the contract; nor can the bank be said to have any vested right to make such a transfer, resulting from any contract with the State. The capacity for contracting is generally within the power of the Legislature in reference to future contracts, and remedies may be modified at the will of the Legislature. "Any deviation," says Judge Story, "from the terms of a contract by postponing or accelerating the period of its performance which it prescribes; imposing conditions not expressed in the contract; or dispensing with the performance of those which are a part of the contract, however minute or apparently immaterial their effect upon it, impair its obligation"—He proceeds to say, that the abolition of all remedies operating *in præsenti*, is also an impairing of the obligation of a contract; "but," he adds, that "every change and modification of the remedy does not involve such a consequence no one will doubt." 3 Story on the Constitution, § 1379.

But it is said, that the contract violated is the privilege granted

to the bank to dispose of its assets as it may think proper, and that such a modification of the charter, without the consent of the corporation is unconstitutional; and that it is not shown that the bank has accepted this modification of its charter.

No adjudged case has been referred to in support of this position, and a very strong case must be made out to induce us to declare the law of a neighboring State unconstitutional, especially when it appears that the purpose of the law was, in a great measure, remedial. We see in that statute one of the means adopted by the legislative power of the State, to maintain inviolate its plighted faith, that the public shall suffer no loss by the operations of the bank, by preventing them from disposing of their assets or portfolio, and suffering their circulation to perish on the hands of the people, and from providing for some favored depositors by a transfer of bills receivable while its notes in circulation are at a heavy discount; by, in effect, compelling the banks always to receive in discharge of obligations due to them the currency with which they have flooded the country, and refusing to the transferree any action upon such evidence of debt. It leaves the remedy by direct action still open to the bank, and only refuses an action to their assignees. A law which should deny to the bill-holder a right to pay a debt due to the bank even in the hands of a transferree, in its own circulation, always payable to bearer, and passing from hand to hand as cash, and so difficult to be traced and identified in the ordinary course of business, would, in our opinion, be as justly liable to be treated as violating the obligation of a contract. But this court will not in any case of serious doubt as to the constitutionality of laws, pronounce them void, especially when their operation is to protect our own citizens from injuries arising from the abuse of the banking power. The disability created by the statute affects not merely the Planters Bank, but all of a particular class of artificial persons, not in reference to any peculiar corporate right or franchise, but as to a species of contract, of which they were previously capable, in common with all other persons capable of contracting at all. No one can be said to have any vested right in any existing legal capacity in reference to any future contract, or advantage to result from this capacity. He who to-day is by law a forced heir in expectancy, may to-morrow by a new law, be

declared liable to be disinherited by will, or incapable even of succeeding *ab intestato*. It may be assumed, indeed, as a general rule, that the mere capacity or incapacity of particular classes of persons to contract, or to inherit, depends upon the legislative will.

We, therefore, conclude, that the law of the Legislature of Mississippi must have its effect, and that the appellee acquired no legal title to the debt due by the appellants to the Planters Bank.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, that the rule taken by the appellee be discharged, and that he pay the costs of both courts.