(113 So. 798)

No. 28417.

**STATE ex rel. MONROE et ux. v. FORD.**

July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. **Parent and child** ⬬2(3)—Child's parents after mother's discharge from insane hospital as improved held entitled to child's custody as against persons holding under adoption executed by father alone during mother's insanity (Act No. 48 of 1924; Act No. 68 of 1918).

Where father alone had surrendered and abandoned guardianship of child to society by act of adoption under Act No. 48 of 1924, during time when mother was committed to hospital for insane under Act No. 68 of 1918, parents, on mother's discharge from insane hospital as improved, *held* entitled to child's custody as against persons to whom society executed act of adoption, though persons claiming under adoption were able to furnish child with greater material advantages.

2. **Insane persons** ⬬4—Insane persons cannot be deprived of legal rights, except as provided by law (Civ. Code, art. 31).

Insane persons, subject to provisions of Civ. Code, art. 31, cannot be deprived of their legal rights otherwise than in manner expressly provided by statute, and cannot be treated as legally dead.

3. **Adoption** ⬬7—Father's act of adoption of minor child, not signed by or in behalf of insane mother, was void as to her (Act No. 48 of 1924; Act No. 68 of 1918).

On relinquishment of minor child by father to society under Act No. 48 of 1924, act of adoption, not signed by mother personally or by one legally authorized to sign in her behalf, was null and void, at least as to her, notwithstanding mother's commitment to insane hospital, under Act No. 68 of 1918.

4. **Parent and child** ⬬2(3)—Mother, who had not relinquished child, may not be deprived of its custody because person claiming under void adoption could give child greater material advantages.

Mere fact that another person claiming minor child under void act of adoption was better able to care for child from material standpoint did not warrant court in depriving mother of right to child's custody.

Appeal from Fourteenth Judicial District Court, Parish of Beauregard; Thos. F. Porter, Jr., Judge.

Proceedings by the State, on the relation of Osman Monroe and wife, against J. D. Ford for habeas corpus to regain possession of relators' minor child. Judgment for defendant, and relators appeal. Judgment appealed from set aside, and possession of the minor child ordered restored to relators.

J. A. Williams, of Lake Charles, and C. D. Reed, of Oakdale, for appellants.

Ped C. Kay, of De Ridder, for appellee.

ROGERS, J. Relators seek by habeas corpus to regain possession of one of their children, a son, 2 years of age. Respondent received the child from the Louisiana Children's Home Society, Inc., of Jennings. In his answer, he alleges that the child was surrendered by his father to said society, which, in turn, through its proper officer, executed an act of adoption to him. That the relator, Mrs. Olivia Monroe, is insane and not mentally, physically, or financially capable or able to attend to the needs of her child.

The court below gave judgment for defendant, and relators appealed.

In the latter part of the year 1924, the relator Mrs. Olivia Monroe suffered from epileptic convulsions. On January 16, 1925, under the provisions of Act 68 of 1918, she was adjudged insane and committed to the Louisiana Hospital for Insane, at Pineville, where she remained until May 8, 1925, when she was discharged as "improved."

On January 29, 1925, while she was in the hospital, her husband, the other relator, placed three of their four children in the custody of the Children's Home Society, Inc., at Jennings. At that time, by separate authentic acts, he declared that he surrendered and abandoned the guardianship of the children to the said society, giving that organization the right to find homes for them, to cause

them to be adopted, and to execute the necessary acts of adoption. He further declared, in said instruments, that his wife was insane and a permanent ward of the Insane Hospital at Pineville.

On October 6, 1925, the Children's Home Society, Inc., acting through its superintendent, executed an act of adoption of the child whose custody is in dispute herein to Mrs. Laura E. Ford, wife of the defendant, of De Ridder, La.

As soon as Mrs. Monroe, the relator, was discharged from the hospital and had returned to her home at Oberlin, La., she sought to obtain possession of her children. It appears, however, that the society to which they had been delivered declined to furnish her with any information concerning them. Having learned that defendant and his wife were in possession of one of the children, relators, on May 19, 1926, instituted these proceedings for its custody. Three days thereafter, defendant by authentic act ratified and confirmed the act of adoption by his wife.

In his reasons for judgment, the district judge declared that the only concern of the court was the correct determination of the question of who is, or has the legal right to the custody of the child. In resolving that issue in favor of the respondent, he held that the father was the only parent legally capable of acting, since the mother was crazy and confined in an institution for the insane; and that he had surrendered his right to the child in favor of the Children's Home Society by signing the authentic act of January 29, 1925. The judge remarked, en passant, that independently of the legal question involved the interest of the child will be served better by permitting it to remain with the defendant, a man of substance, whose home is immeasurably superior to the home of its parents.

Act 48 of 1924, amending and re-enacting Act 31 of 1872, sets forth the manner of adopting children. It provides, among other things, that if the child shall have a parent or parents the concurrence of such parent or parents shall be obtained to the adoption, and, as an evidence thereof, such parent or parents shall be required to sign the act. It provides, also, that in the event a child shall have been abandoned by its parents, or by the father, if the mother be dead, or by the mother, if the father be dead or unknown, to a charitable institution, the authorized representative or officer of the said institution shall have the right to sign the act of adoption of the abandoned child with the same legal effect as if it had been signed by its parent or parents.

These provisions of the statute are invoked by defendant in support of his contention that the child presently in his possession occupied the status of an abandoned child because of the insanity of the mother and under the declarations of its father in the instrument of January 25, 1925; and that the society to which it was so abandoned was legally empowered to execute, through its superintendent, the act of adoption in behalf of the child.

[1] It is unnecessary to consider the legal effect of the written relinquishment of the custody of his child by the father, for, under the very terms of the statute itself, where the parents are living, the abandonment of the child must be by both. The theory advanced by defendant, that Mrs. Monroe being insane was, in legal effect, dead, is not sound.

It is true, Civ. Code, art. 31, provides that:

"Persons of insane mind are those who do not enjoy the exercise and use of reason, after they have arrived at the age at which they ought, according to nature, to possess it, whether the defect results from nature or accident. This defect disqualifies those who are subject to it, from contracting any species of engagement, or from managing their own estates, which are for this reason placed under the direction of curators."

[2] Nevertheless, those who may be subject to the provisions of the article cannot be deprived of their legal rights otherwise than in the manner expressly pointed out by law. The right of a mother to the custody of her child is one of the most important valuable rights known to the law. Conceding that she may permanently divest herself by contract of her parental authority, it is clear that she, or her duly authorized agent, must execute the contract; or if she be incapable of doing so, because of insanity or other cause, then, possibly, though we express no opinion to that effect, her duly appointed and qualified curator may sign in her behalf.

Act 68 of 1918, under which Mrs. Monroe was sent to the insane hospital, merely empowers a district judge of competent jurisdiction to commit, for care and treatment, an insane person to one of the hospitals provided by the state for that class of persons. It does not, in any manner, authorize the appointment of a curator or other legal representative to manage the estates or affairs of the person so committed.

[3] Since the so-called act of adoption or relinquishment to the Children's Home Society was not signed by Mrs. Monroe personally, nor by any one legally authorized to do so in her behalf, it is, as to her at least, null and void. In re Brands' Estate, 153 La. 195, 95 So. 603. It follows as an immediate corollary to this ruling that the attempted act of adoption by the society to the defendant is without effect.

[4] The mere fact that the defendant is better able than the relators to take care of the child in a material way does not warrant the court in refusing to recognize the right of the mother to the custody of her child. The love of a mother for her child is one of the most powerful of the human emotions. It is the best guaranty of the child's welfare. The home, though one of poverty, in which that love finds expression is infinitely more preferable for the child than the home of a wealthier guardian with its luxury and social advantages.

It is suggested in argument, in line with averments in the answer, that the relator Mrs. Monroe is suffering from an incurable malady and the child will not be safe in her care. A considerable amount of evidence was adduced on this phase of the case. Several physicians testified that, in their opinion, the disease from which Mrs. Monroe is suffering is incurable. Two of these physicians are connected with the hospital in which she was a patient for approximately four months. They also deposed that in one of her epileptic convulsions, Mrs. Monroe was "likely to do violence to her children or to any one else around her." Against this theory, however, is the fact that, after treatment, she was discharged from the hospital as "improved." Why discharge her at all, if she is incurable and "likely to do violence" to those "around her?" And the head of the institution frankly admitted, on cross-examination, in answer to direct question, that he would not have released her if he had thought she would be dangerous to members of her family or might inflict injury on her children. His testimony, on the whole, indicates that he was influenced in his opinion that the mother was incapable of caring for the child, not merely by the condition of her health, but by the further circumstances of the poverty of the relators and the comparative affluence of the defendant.

The coroner of the parish lives in Oberlin, where the relators reside. He was one of the physicians who examined Mrs. Monroe when she was sent to the hospital. He testified that he did not think she would harm the child in any way. Since her return from the hospital she has had the care and custody of one of her children, then 3 years of age. She has not injured this child in any manner, and it is, apparently, as well cared for as re-

lators' circumstances will permit. Up to the time of the trial of this case in the district court, Mrs. Monroe never had an attack or convulsion. And it was asserted in argument, and not denied, on the hearing before us, that the same condition obtained then.

Both of the relators are hard-working people. Mr. Monroe is the proprietor of a blacksmith shop, and Mrs. Monroe augments the family exchequer by taking in washing. They own their modest home, and are possessed of two cows, and work a garden. Their joint earnings are approximately $85 per month.

We can easily understand that this little child has endeared itself to the defendant and his wife. We appreciate their unwillingness to part with him and sympathize with their distress in being compelled to do so. But the legal rights of the parents, particularly of the mother, must be recognized and enforced.

Our conclusion is that relators are entitled to the relief prayed for.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that the possession of the child, Colton Monroe, be restored to relators, his lawful parents, and that respondents pay the costs of this proceeding.