*472
 
 ODOM, Justice.
 

 On January 10, 1918, the plaintiff, Percy J. Owles, and his wife, who died December 3, 1937, appeared before a notary public and two witnesses and signed an act in which they declared that they “have adopted and do hereby formally adopt as their own child,' Willie Jackson, who is now 9 years of age, and in the possession and under absolute control of the Louisiana Children’s Home Society, a" corporation domiciled at Jennings”, Louisiana. The act was signed also by E. B. Dillard, superintendent of the. Children’s Home Society.
 

 On the same day, the plaintiff and his wife appeared before the same notary, and in the presence of the same two witnesses signed another act declaring that “they have adopted and do hereby formally adopt as their own child Effie Harper who is now 10 years of age, and in the possession and under absolute control of the Louisiana Children’s Home Society”. This act of adoption, like the other, was signed by E. B. Dillard, superintendent of the Louisiana Children’s Home Society.
 

 On November 4, 1940, about three years after the death of his wife, the plaintiff, Percy J. Owles, filed two suits, one against Willie Jackson and the other against Effie Harper (now the wife of E. D. Dunbar), these being the two children named in the two purported acts of adoption above referred to, and the purpose of the suits being to annul and set aside the purported acts of adoption.
 

 In each of the suits, plaintiff alleged that the act of adoption was null, void, and of no effect for the reason that it was not signed by the blood mother of the child, the mother being alive and available at the time the act was passed. In each suit plaintiff prayed for judgment decreeing the act to be null and void and ordering it cancelled and erased from the public records.
 

 Plaintiff alleged that his wife, who joined in the purported acts of adoption in 1918, had died intestate on December 3, 1937, leaving no forced heirs, and that under the law he had inherited her interest in the property which belonged to the community existing between them, but that the defendants, Effie Harper and Willie Jackson, were claiming her interest in the property by inheritance as her adopted children, and that, in order that his right to the property be recognized, it was necessary that the purported acts of adoption be decreed null and erased from the records.
 

 Effie Harper,, now Mrs. Dunbar, filed answer in which she alleged that plaintiff’s, petition set out neither a, cause nor a right of action. She admitted that the notarial' act’ of adoption was not signed by her mother, who was then alive and is still living. She alleged that it was not necessary for 'her mother to sign the act for the reason that she was then in the custody and under the sole control of the Louisiana Children’s Home Society, and that her parent's'had'given their consent in writing to the adoption of her by the plaintiff and his wife, for which reason she alleged that the Children’s Home Society was authorized by law to consent to the adoption, and
 
 *473
 
 that its consent, which was given, was binding upon her mother.
 

 She alleged in the alternative that whatever right plaintiff may have had to set ■aside the act of adoption is barred by six months’ prescription, as provided in Section 13, Act 46 of 1932, and the amendments thereof.
 

 In the suit against Willie Jackson, the plaintiff made practically the same allegations relating to the nullity of the act of adoption as those made in the suit against Effie Harper. Willie Jackson in his answer urged the same defenses as were urged by Effie Harper. He admitted that his mother did not sign the act of adoption to give her consent thereto, although she was living at the time and is still living at Atlanta, Texas.
 

 In the suit against Effie Harper, there was judgment in favor of plaintiff and against the defendant, decreeing that the purported act of adoption was null, void, and of no effect, and ordering that it be cancelled and erased from the records. In the case against Willie Jackson, there was judgment in favor of plaintiff and against the defendant, decreeing the act of adoption null and void. In each case the defendant appealed.
 

 While there were two separate suits filed by plaintiff, one against Effie Harper and one against Willie Jackson, and two separate judgments rendered and two separate appeals taken, yet the cases seem to have been consolidated in the trial court and were consolidated and argued together in this court, the reason for this being that the facts involved in the two cases are almost identical and the law points involved are precisely the same. We shall therefore treat the two cases as one and dispose of both in one opinion.
 

 The pertinent facts involved are not disputed in either case. It is admitted that the mother of Effie Harper was living and that her place of residence was known, or could have been ascertained, at the time the purported act of adoption was passed in 1918, and that she did not sign the act to give her consent thereto. And it is admitted by the defendant Willie Jackson that, at the time the purported act of adoption was passed, his mother was living, and that she did not sign the act to give her consent to the adoption, although her whereabouts was then known.
 

 The law relating to the adoption of children in force at the time the acts of adoption were passed was Act 31 of 1872, which reads in part as follows:
 

 “Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened, That any person above the age of twenty-one years shall have the right, by act to be passed before any parish recorder or notary public, to adopt any child under the age of twenty-one years; provided, that if such child shall have a parent or parents, or tutor, that the concurrence of such parent or parents or tutor shall be obtained, and as evidence thereof shall be required to _sign said act.”
 

 This court has repeatedly held that adoption is a creature of the law, is what the law makes it, and that, to establish the
 
 *474
 
 relation, the statutory requirements must be strictly carried out; otherwise the act of adoption is an absolute nullity. Succession of Pizzatti, 141 La. 645, 75 So. 498; In re Brands’ Estate, 153 La. 195, 95 So. 603; Succession of Brand & Wife, 162 La. 880, 111 So. 267; State ex rel. Monroe v. Ford, 164 La. 149, 113 So. 798; Hardy et al. v. Mobley, 183 La. 668, 164 So. 621.
 

 In the Hardy case, we reviewed the law and the jurisprudence of this state relating to the adoption of children, and reiterated and reaffirmed our previous rulings that, -adoption being a creature of the law, it necessarily follows that, to establish that relation, the statutory conditions must be strictly performed.
 

 In the case of In re Brands’ Estate, supra [153 La. 195, 95 So. 604], we said:
 

 “Act 31 of 1872 requires the concurrence of both parents of the child, if they are living, and -as an evidence thereof they must sign the act. The sole exception to this rule is the case of a foundling. Where the law makes no exceptions, the court cannot.”
 

 In that case it was held that an act of adoption not signed by the child’s mother, as required by Act 31 of 1872, but by the father alone, was an absolute, and not merely a relative, nullity.
 

 Effie Harper alleged in her answer, and her counsel argues, that both her father and her mother gave their written consent to the adoption. This defense and argument arise out of the fact that, three years prior to the date on which the act of adoption was passed, her father executed a written instrument under private signature, in which .it is recited that he had surrendered the possession of the child unto-Percy J. Owles and his wife, and that he granted unto them “full and complete custody, care and control of my minor child,. Effie Harper, six (6) years of age on May 22nd, 1914”. The instrument further recites that “I further agree not to molest or disturb the said Percy J. Owles and wife in the peaceable possession and enjoyment of the custody of said child, hereby releasing and relinquishing all claims to-her as her father and agree to assist the said Owles in maintaining the custody of said child”. This written instrument was subsequently approved and signed by the mother of the child.
 

 The instrument does not state, and we do not construe it to mean, that the parents intended to consent to the adoption of their child by plaintiff and his wife. But, even if it be so construed, it is unavailing, for the reason that, three years later, when the notarial act of adoption was passed, the child’s mother was living and available but did not sign it, and Act 31 of 1872 specifically requires that, if the child has a parent or parents living, or a tutor, his or their concurrence shall be obtained, and as evidence of such concurrence the living parent or parents or tutor “shall be required to sign said act” of adoption.
 

 The provisions of the act are specific, and, according to its terms, the concurrence of the parent or parents shall be obtained, and, to evidence that concurrence, they are required to sign the act.
 
 *475
 
 No exceptions are made, and as we said in the case of In re Brands’ Estate, supra, “Where the law makes no exceptions, the ■court cannot”.
 

 Counsel for these defendants argues 'that, even though the express provisions ■of Act 31 of 1872 were not complied with, the acts of adoption were valid under the provisions of Act 173 of 1910.
 

 Counsel is mistaken. That act provides in Section 1 “That the foundlings, whom persons from charity have received and brought up, cannot be claimed by its [their]' father and mother, unless they prove that the child was taken from them by force, fraud or accident.”
 

 It is conceded that neither Effie Harper ■nor Willie Jackson was a foundling.
 

 Section 3 of the act provides that, should any child, not a foundling, be left in an asylum for a period of three years and should the parents or parent of said child “not have made substantial contribution to its support during that period”, then and in that event, unless said parent or parents “show good reason for not having contributed to the support of the said child, said child shall be considered abandoned, and neither the father nor the mother, nor any other relative, shall have any further claim or right to said child”.
 

 Section 4 of the act provides that no abandoned child shall be removed from a charitable institution and delivered by the officers thereof into the care and custody of anyone “without first having given ten days’ prior notice in writing to the parent or parents of such child, if the whereabouts of 'such parent be known to the officers of said institution”.
 

 Section 5 of the act provides that parents may give their child or children to charitable institutions by notarial act signed in the presence of two witnesses, and that the child so given shall be deemed an abandoned child, and all parental right or authority over such child shall cease.
 

 Conceding without holding that a charitable institution which has possession of an “abandoned” child is authorized to consent to its adoption, this act has no application to either of these cases, for the reasons, first, that neither Effie Harper nor Willie Jackson was an abandoned child — Effie Harper never having been in the custody of the Louisiana Children’s Home Society, and Willie Jackson not having been there three years, and neither having been given to the society by notarial act — , and, second, that the ten-day notice prescribed by the act was not given to the parents.
 

 There is no merit in defendants’ alternative plea that plaintiff’s right to set aside these acts of adoption is barred by the prescriptive period of six months, as provided in Section 13, Act 46 of 1932, as amended. That act prescribes the method and procedure of adopting all persons, both majors and minors. It specifically repeals Act 31 of 1872, Act 48 of 1924, and Act 13 of 1928, and all other laws in conflict therewith. Section 13 of the act provides that any and all adoptions theretofore made “be and they are hereby confirmed, approved and validated, and that any action to set
 
 *476
 
 aside or annul any act of adoption made prior to the passage of this act shall he prescribed after the lapse of six months from and after the promulgation of this act”.
 

 The prescriptive period mentioned in this act has no application to these cases for the reason that the record shows that each of the acts of adoption was annulled and set aside by the parties to them long prior to the- date on which the 1932 act went into effect.
 

 As to Effie Harper, the record shows that on March
 
 7,
 
 1921/ she telephoned to her mother, who was then living not far away, to come to plaintiff’s home and take her. away, and that her mother promptly complied with the daughter’s request. The mother requested that plaintiff and his wife release her daughter from custody, to which request they gave assent. On the same day, plaintiff and his wife went before a notary public and in the presence of two witnesses signed an act releasing “any and all claim, right, title and interest of every kind and nature in the said child”. The-act recites that plaintiff and his wife surrendered the custody of the child and delivered her to the Louisiana Children’s Home Society, from which society the act of adoption recited that she had been obtained, although the record shows that, as a matter of fact, the society had never had actual custody of the child. The record shows further that on the same day the Louisiana Children’s Home Society delivered the child into the care, custody, and keeping of her mother. While these transactions took place more than 20 years ago, the record discloses that during all that time Effie Harper never returned to the home of plaintiff and his wife, and that there was no .communication between them. It is apparent that -all parties concerned considered that the relationships brought about by the purported act of adoption were severed and .completely abandoned on March
 
 7,
 
 1921, when plaintiff and his wife released the child and surrendered her into the custody of the society and her mother.
 

 As to Willie Jackson, the record shows that on May 5, 1926, his brother came from his home in Atlanta, Texas, to the home of plaintiff and his wife in Jennings, Louisiana, and requested that the boy be released so that he could be delivered back to his mother, who was then living in Atlanta. The record further shows that plaintiff and his wife acceded' to the request, and, by notarial act almost identical in terms with the one passed in Effie Harper’s case, the custody of the boy was surrendered by plaintiff -and his wife, who delivered him to the Children’s Home Society, which society, in turn, delivered him to his brother. As in Effie Harper’s case, it appears that the parties concerned intended that all the ties and relationships resulting from the purported act of adoption be severed. The record shows that' Willie Jackson left the home of plaintiff and his wife more than 14 years prior to the date on which the suit was instituted, and that he has never returned, and, so far as the record shows, there was no communication of any kind between him and plaintiff and his wife.
 

 
 *477
 
 Effie Harper was about 13 years old when she left her foster parents in 1921, and Willie Jackson was about 17 when he left them in 1926. Neither child ever thereafter manifested the slightest interest in plaintiff and his wife, nor did plaintiff and his wife display any interest in the children. Each of these children reached the age of 21 years at least 10 years before these suits were filed, and at least seven years before the death of Mrs. Owles, yet neither appeared to claim by inheritance the property of which she died possessed.
 

 Counsel for defendants argues that the parties could not set aside by convention the status which these children had acquired as a result of the acts of adoption. The answer to that argument is that they did not acquire the status of adopted children for the reason that the purported acts of adoption were absolute nullities. Neither the plaintiff and his wife nor the parents of the children were bound by the provisions of the acts. Nobody was bound. The cancellation or setting aside of the purported acts of adoption was not made at the suggestion or request of plaintiff and his wife, but at the suggestion of the parents of the children, who had not made themselves parties to those acts. These parents had a perfect right to demand the custody of their children, and this they did. The children not having been legally adopted, plaintiff and his wife had no legal right to keep them. They surrendered them to their parents when called for, and, to evidence the surrender, they signed the notarial acts above referred to. They did voluntarily what they could have been compelled to do through judicial process.
 

 The provisions of Act 46 of 1932 have no application to these cases, for the reason that, at the time it was adopted, the purported acts of adoption had already been set at naught at the suggestion and request of the parents of the children, acquiesced in by plaintiff and his wife. There was no act of adoption to be ratified in either case.
 

 For the reasons assigned, the judgments appealed from are affirmed.