78 So.2d 424 (1955)
Mrs. Alice LYONS et al.
v.
Ruby Lee GOODMAN.
No. 3945.
Court of Appeal of Louisiana, First Circuit.
January 28, 1955.
Rehearing Denied March 28, 1955.
*426 Moss & Graham, Lake Charles, for appellants.
John A. Patin, Lake Charles, for appellee.
ELLIS, Judge.
This is an action to establish title to real estate instituted by the collateral heirs of Severinus Goodman, Jr., deceased, against Mrs. Ruby Lee Goodman, divorced wife of Joseph L. Camalo, who contends that she is the legally adopted daughter of said decedent. The property involved is situated in Calcasieu Parish, Louisiana, and is described as follows, to wit:
The East twenty five (25) acres, more or less, of the Southeast Quarter of the Northeast Quarter (SE¼ of NE¼) of Section Seven (7); and the Southwest Quarter of the Northwest Quarter (SW¼ of NW¼) less the Southeast Seven and one half (7½) acres thereof, of Section Eight (8), Township Ten (10) South Range Nine (9) West, Louisiana Meridian.
Plaintiffs alleged that Severinus Goodman, Jr., left no ascendants nor descendants and that upon his death his interest in the said property was inherited by petitioners as the surviving stepsisters and brothers and sisters.
It is further alleged that the defendant Ruby Lee Goodman was not the child of Severinus Goodman, Jr., and was never adopted by him and is not related to him in any manner. The decision of the case turns upon this allegation. If the defendant Ruby Lee Goodman was legally adopted judgment should be against the plaintiffs and in her favor as was rendered by the Court below. From this judgment the plaintiffs have appealed and the defendant has filed a motion to dismiss the appeal taken by plaintiffs-appellants on the ground that this Court is without jurisdiction as this case involves a matter of adoption and under the provisions of Section 10 and 29 of Article 7 of the Louisiana Constitution of 1921 appellate jurisdiction is vested in the Supreme Court of Louisiana.
As to the motion to dismiss, it should be overruled for this proceeding was instituted by the plaintiffs under the provisions of LSA-R.S. 13:5062 which provides that "this action shall be known as the action to establish title to real estate."
The question before the court was whether or not the defendant Ruby Lee Goodman owned 11/60th interest in the tract of land involved in the suit. If she was the legally adopted child of Severinus Goodman, Jr., she owned such interest, and if not she had no interest. It is argued by counsel for plaintiffs in their brief: "The question of whether she was adopted was only incidental to the question as to who owned the land and was only a matter that must be settled in order to decide who owns the land."
Our Supreme Court in the case of Smith v. Shehee, 175 La. 394, 396, 143 So. 338, in deciding the question submitted to it by the Court of Appeal as to whether the latter was right in passing upon the title of the parties to the suit when that question involved the legitimacy of the parties, stated:
"* * * The jurisdiction of the court was determined properly by the value of the property in contest, notwithstanding the title to the property depended upon the question of legitimacy *427 of certain heirs. The provision in section 10 of article 7 of the Constitution 1921 giving the Supreme Court `appellate jurisdiction' of all suits * * * involving * * * the legitimacy, or custody of children, and of matters of adoption and emancipation.' has reference to suits in which one of the matters mentioned is the matter in contest. That provision in the Constitution does not mean that the Supreme Court shall have appellate jurisdiction of every case in which the question of legitimacy of a person arises incidentally, or has to be decided in order to settle the matter in contest. For example, section 10 of Article 7 of the Constitution excludes from the appellate jurisdiction of this court suits for compensation under the Employer's Liability Act, or Workmen's Compensation Law; and it happens often that the legitimacy of a dependent claiming compensation for the death of an employee is questioned by the defendant in such a case.
* * * * * *
"Our answer to the question propounded by the Court of Appeal is that the court did have jurisdiction to decide the case of Smith v. Rambo, 15 La.App. 448, 131 So. 524."
There is no contention that the value of the land in dispute is in excess of $2,000, and under the above authority as applied to the facts of this case, the motion to dismiss is overruled.
On the trial of the case the defendant tendered evidence that she had been adopted by Severinus Goodman, Jr., and his wife during the year 1929 in accordance with the provisions of Act 48 of 1924 which amended and re-enacted Act 30 of 1872 and the first section of the 1924 act reads as follows:
"Section 1. That any person above the age of twenty one years shall have the right, by act to be passed before any parish recorder or notary public, to adopt any child under the age of twenty one years; provided, that if such child shall have a parent, or parents or tutor, that the concurrence of such parent or parents, or tutor, shall be obtained and as evidence thereof, shall be required to sign said act; and in the event the said child shall have been abandoned by its father and mother, or by the father in the event the mother shall be dead or by the mother in the event the father shall be dead or unknown, to a charitable institution or in the event of the charitable institution taking charge, custody and control of a foundling, then, in that event, any authorized representative or officer of the said charitable institution shall have the right to sign the Act of adoption in behalf of the said foundling or abandoned child with the same legal effect as if it had been signed by the parents or tutor of the said child."
Section 2 of Act 48 of 1924 is the only remaining provision and it merely provides that all laws or parts of laws in conflict therewith are repealed.
Parol evidence was offered in lieu of the formal written instruments, the original and copies of which the defendant contended had been lost or destroyed. To such evidence the plaintiffs objected on several grounds. The evidence was admitted subject to the objections and in a well-written opinion the objections were overruled for the reasons given therein.
Counsel for plaintiffs objected to the parol evidence on the ground that adoption was a status conceived by the Legislature and in order to create such status there must be a strict compliance with the law relative to the adoption, this is the same thing as saying that adoptions could be completed only by written documents in 1929 when the defendant contends she was legally adopted in accordance with the 1924 act. The learned District Judge correctly answered this argument by stating in his written reasons: "In this case, however, the parol evidence was offered to prove the execution and conditions of a lost document and for that purpose it is admissible."
*428 Counsel for plaintiffs in this Court has apparently abandoned all other objections to the testimony and now relies only upon his objection to the introduction of parol testimony on the ground above stated and apparently, having been overruled on this point, he contends that on the merits of the case the defendant has not proven the adoption as required by law. In the event that we might be wrong in stating that plaintiff has abandoned his objection to the proof of adoption by parol evidence tending to show the execution and contents of the written act of adoption because the record does not disclose that the loss of such a document had ever been advertised as required by Article 2280 LSA-C.C., we will consider such objection.
The jurisprudence of Louisiana is well settled to the effect that any instrument which has been lost or destroyed may be proved by secondary evidence. The manner of proof varies with the nature or kind of document. If the lost or destroyed instrument is a conventional obligation subject to the provisions of our LSA-Civil Code as appears in Chapter 6 of Title 4 and as defined therein, then it is subject to Articles 2279 and 2280 which are included in Chapter 6 of Title 47 under the label "Of the Proof of Obligations and of That of Payment."
In view of the fact that the act of adoption could not be considered a conventional obligation we agree with the statements, reasonings and conclusion of the District Judge in his written reasons for judgment that the provisions of Article 2280 do not apply in a case such as the one presented here. In his written reasons he stated:
"Counsel for plaintiffs further argue that parol evidence tending to show the execution and contents of the written act of adoption should be excluded because the record does not disclose that the loss of such a document has ever been advertised as required by Article 2280 of the Revised Civil Code. The evidence does not show whether the loss of the act of adoption was ever advertised, and the Court concludes that there was no such advertisement. Article 2280 of the Revised Civil Code provides that:
"`In every case, where a lost instrument is made the foundation of a suit or defense, it must appear that the loss has been advertised, within a reasonable time, in a public newspaper, and proper means taken to recover the possession of the instrument.'
"This article, however, appears in Chapter 6 of Title IV of the Civil Code, which title is labeled `Of Conventional Obligations.' Numerous definitions of conventional obligations are contained in Title IV of the Civil Code, and particularly are such definitions contained in Chapter 1 of that title, under the heading of `General Provisions,' in Chapter 2, labeled `Of the Requisites to the Formation of a Valid Agreement', and in Chapter 4, entitled `Of the Different Kinds of Obligations.' It is apparent from the provisions of the articles contained in those chapters, and it otherwise is logical to conclude, that an act of adoption is not a conventional obligation within the meaning of Title IV of the Civil Code. Chapter 6 of that title is labeled `Of the Proof of Obligations and of That of Payment.' Article 2280 is included in Chapter 6, and it is one of the articles setting out the methods by and conditions under which `Testimonial Proof' may be offered to establish obligations or to prove payment of obligations.
"This Court concludes that Article 2280 of the Civil Code is limited to cases involving the proof of conventional obligations, as defined throughout Title IV of the Civil Code, that an act of adoption is not such an obligation, and that the provisions of that article do not apply in a case such as the one presented here. For the reasons assigned, therefore, the objections urged to the introduction of parol evidence are overruled, and such evidence is admitted."
In the early case of Willett v. Andrews, 106 La. 319, 30 So. 883, which was a petitory action and involved an objection to parol evidence to establish the execution of *429 a deed which had been lost our Supreme Court stated:
"We pass to a consideration of grounds urged by plaintiff against the admissibility of the testimony of Mrs. McKnight, who testified that her husband had been the owner of the property in controversy; that she at the time (about 30 years ago) had the deed of sale in her possession, showing his ownership of the property. She said that the land was entered in 1860 at the Monroe Land office, and named the grantee who went into possession after the entry of the land had been made by him, and built a house on it. Later, in our decision, as the testimony has important bearing, we will excerpt further from the testimony of this witness. The question to which objection is urged is: `Was there a deed made to this land in controversy by Peter D. Parker (who held from the entryman by inheritance) and his mother to your husband, H. McKnight? Have you seen the deed, or had it in your possession? Is it lost or destroyed?' It is objected that the asserted loss of the instrument had not been advertised.
"We take up in the first place for decision the question regarding the necessity of advertising the loss of a document. There are two articles in the Civil Code regarding the admissibility of the secondary evidence of a lost instrument, viz., 2279 and 2280. Under the first article cited, this court held, in Gorden v. Fahrenberg, 26 La.Ann. [366] 367, that a destroyed deed need not be advertised, citing Beebe v. McNeill, 8 La.Ann. 130, and Weaver v. Cox, 15 La.Ann. 463. Again, in Succession of Woods, 30 La.Ann. 1002, this court held that advertisement was not a prerequisite to the admissibility of testimony of lost documents when the loss is established. The rule of evidence laid down in the second article of the Code just cited is controlling when the instrument is made the foundation of the suit, but here the instrument was not made the foundation of the suit, nor has it anything of a commercial character requiring advertisement. A missing link in the chain of title, as in this case, is not necessarily the foundation of the suit, rendering it necessary to advertise in order to be able to prove the loss.
"Counsel for plaintiff objected, in the second place, on the ground that parol testimony is not admissible to prove title to real estate. This ground is sustained by law, but here the attempt was not made to prove title to real estate, but to prove the contents of a lost instrument. Wood's Case cited supra, gives rise to but one inference, and that is that, if the instrument is lost or destroyed, then secondary evidence is admissible. In Sharkey v. Bankston, 30 La. Ann. 891, the court admitted parol proof of contents of a judgment when it was shown that the record had been destroyed. * * * In view of the loss, plaintiff was entitled to supply the loss. From Best, Ev. p. 453, we quote: `I have always understood the rule to be that, where a party is entitled to give secondary evidence at all, he may give any species of secondary evidence within his power.' The American rule of evidence may not be as broad, but it does not, however, exclude parol testimony. We are well aware that the admission of evidence of contents of a lost paper gives rise to important issues. There is no good reason, however, why the testimony should not be admitted and considered if it is evident that it serves to secure a right to which parties are justly entitled. The sincerity and candor of those who seek to prove contents of lost documents must be above all suspicion, and in addition, corroborative facts obtainable must not be withheld. * * *"
It is equally well settled in our jurisprudence that any instrument subject to the provisions of Article 2279 when proven to have been destroyed do not have to be advertised as provided in Article 2280 of the LSA-Civil Code. Grotevant v. Dorrestein, 152 La. 734, 94 So. 372; Childers v. Hudson, 223 La. 181, 65 So.2d 131.
For other cases dealing with lost or destroyed instruments see In re Sprowle's Will, 109 La. 352, 33 So. 365; Succession of Granger (In re Duhon), 155 La. 225, 99 *430 So. 46; White v. White, 156 La. 324, 100 So. 442; State ex rel. Lowentritt v. New Orleans Public Service Inc., 163 La. 78, 111 So. 503; Shreveport Long Leaf Lumber Co. v. Garson Bros., 152 La. 343,93 So. 117; Murff v. Murff, La.App., 1 So.2d 407; Yuspeh v. Acme Fast Freight Inc., 222 La. 747, 63 So.2d 743.
In the present case while we believe that an act of adoption is not subject to the rules prescribed in our LSA-Civil Code with regard to conventional obligations and therefore when proven to have been lost or destroyed, parol evidence is admissible under the general rule, and also a failure to advertise as contained in Article 2280 of the LSA-Civil Code is not necessary in this case for under the testimony of Mr. Vance Plauche, attorney at law of Lake Charles, Louisiana, it is proven that he was the law partner of Judge Louis Braden, whom it was shown drew and caused to be executed the act of adoption in this case, and when he moved to Omaha, Nebraska about 1932 his legal files were left with Mr. Plauche in Lake Charles, and Mr. Plauche testified in answer to the question, "Where are they now?" that "They have been destroyed."
For the above reasons we are of the opinion that the District Court properly overruled the objection to the parol evidence.
After a careful reading of the evidence and briefs, we find that the learned Judge of the District Court in his written reasons has properly evaluated the testimony and answered all arguments advanced, and reached a proper decision of this matter, and we therefore quote a portion of his written reasons for judgment:
"The evidence establishes to the complete satisfaction of this Court that the defendant, Ruby Lee Goodman, was born on March 14, 1929, the daughter of Ruby Estelle Harrington (now Mrs. Ruby Wiggins), who was then unmarried. When defendant was not more than nine days old, Ruby Estelle Harrington gave the child to Severinus Goodman, Jr., and his wife, Mrs. Lena Goodman. Within three or four weeks thereafter the said Mr. and Mrs. Goodman employed W. C. Braden, who was then a notary public and a practising attorney in the city of Lake Charles, to prepare the documents necessary for them to adopt the child. Mr. Braden did prepare such an act of adoption and it was duly executed by both of the adoptive parents and by the mother of the child. The original and all copies of this act of adoption, however, have been lost or destroyed and could not be produced at the trial of this case.
"Counsel for plaintiffs argues that adoption is a status conceived and created by the Legislature, and that in order to create that status strict compliance with the provisions of law relating to adoptions must be shown. He contends that the evidence fails to establish that there has been strict compliance with all of the provisions of the adoption statute. In support of that argument he cites the cases of Succession of Pizzati, 141 La. 645, 75 So. 498; In re Brands' Estate, 153 La. 195, 95 So. 603; Succession of Brand, 162 La. 880, 111 So. 267; State ex rel. Monroe v. Ford, 164 La. 149, 113 So. 798; Hardy v. Mobley, 183 La. 668, 164 So. 621; Owles v. Jackson, 199 La. 940, 7 So.2d 192; and Alexander v. Gray, La.App., 181 So. 639.
"This Court agrees with counsel for plaintiffs in his contention that strict compliance with the adoption statute is required. The remaining question presented, then, is whether the evidence is sufficient to establish that the parties did comply strictly with the provisions of the statute in completing this adoption.

* * * * * *
"There appears to be no direct evidence to the effect that Severinus Goodman, Jr., was over 21 years of age at the time the act of adoption was completed. No issue was made of that point, however, and it appears that he must have reached the age of majority prior to June 24, 1926, which is the date of the judgment rendered in the succession of Severinus Goodman, Sr., a copy of which judgment was received in evidence marked P-1. The Court concludes, *431 therefore, that decedent was over 21 years of age at the time the act of adoption was completed. The evidence shows conclusively that defendant was an infant at that time, and thus the requirements as to the ages of the adoptive parents and the adopted person have been satisfied.
"The only statutory requirements as to the form or provisions of the act of adoption are that it be `by act to be passed before any parish recorder or Notary Public,' and that `if such child shall have a parent, or parents, or tutor, that the concurrence of such parent, or parents, or tutor, shall be obtained and as evidence thereof, shall be required to sign said act.'
"The evidence shows that after the act of adoption had been prepared by W. C. Braden, it was mailed to defendant's mother, Ruby Estelle Harrington in Beaumont, Texas, and was executed by her before a notary public and two witnesses in the `Old Court House' in that city. Those who testified were not able to recall the name of the notary before whom it was executed, but they did recall that R. V. Harrington and John Wilkerson were present and signed as witnesses. The document was then returned to Mr. Braden and shortly thereafter it was executed by Mr. and Mrs. Severinus Goodman, Jr., as the adoptive parents, before the said W. C. Braden, Notary Public, and in the presence of Mr. Seaman Mayo and Miss Willie Mae Grafton (now Mrs. W. M. Gibbs), who signed as witnesses, all of which was done in the office of said notary in Lake Charles. Mr. Braden kept the original of the instrument and gave a copy of it to Mr. and Mrs. Goodman and another copy to defendant's mother. The original and both copies have been lost or destroyed.
"Counsel for plaintiffs argues in his written brief that the act of adoption is fatally defective because the father of the child did not execute it, and that `there is no testimony in the record concerning the marital status of the mother of the child at all.' Mrs. Wiggins, defendant's natural mother, testified that she had not been married at the time the baby was born (tr. 63). That testimony was never contradicted and the Court considers it to be true. Under those circumstances the concurrence of the mother alone is sufficient to comply with the provisions of Act 48 of 1924.
"It is further argued that the testimony fails to establish whether the document constituted an act of adoption or merely a consent to the adoption, and that the evidence otherwise is not sufficient to establish that there was a strict compliance with the provisions of the adoption statute.
"None of the parties are able to recall the exact language used in the document prepared by Mr. Braden. The testimony of Mrs. Lena Goodman, who executed it as one of the adoptive parents, reads in part as follows:
"`Q. Do you know from your reading what those papers provided? A. I couldn't say word for word down the line but we had legally adopted the so said Ruby Lee Goodman, on that order, as our legal child, a child of our own.'
* * * * * *
"`Q. Is there any doubt in your mind about what the papers stated? A. No. They, throughout, all the way through, it was she was legally adopted, that she would be as our own, legally a child of our own.'

* * * * * *
"Mrs. R. V. Harrington, mother of Ruby Estelle Harrington and grandmother of defendant, testified that she had read the document signed by her daughter and had kept her daughter's copy of that document for a number of years. Her testimony as to the contents of the instrument is:
"`Q. Do you remember what they said? A. Well, that has been a long time. I remember some. I remember Ruby Estelle Harrington, and I remember Ruby being adopted by S. T. Goodman, I believe, and Lena Goodman.
"`Q. Were they adoption papers? A. Adoption papers, Ruby Lee Goodman.

*432 "`Q. Do you know whether or not those papers had anything about Ruby Estelle Harrington consenting to the adoption of that baby? A. They did. It said Ruby Estelle Harrington had legally adopted this baby to Mrs. S. T. I don't know how it read, I couldn't repeat it. That has been a long time. Anyway, it read that she had adopted this baby to the Goodmans.'

* * * * * *
"R. V. Harrington, who signed as a witness to the signature of Ruby Estelle Harrington, testified as follows:
"`Q. Are you able to state the purport of the papers, what they in effect said? A. Well, the papers was in regards to the adoption of this baby to Mr. and Mrs. Goodman, here in Lake Charles, T. S. Goodman, I believe are his initials. That was what the papers were for.
"`Q. That was what the papers were for? A. Yes.
"`Q. Can you state whether or not the papers that Ruby Estelle signed gave her consent to the adoption? A. Yes, that's right.'

* * * * * *
"The testimony of Mrs. Ruby Wiggins, defendant's mother and the former Ruby Estelle Harrington, with reference to the contents of the document is as follows:
"`Q. Can you tell us in substance what the papers said? A. No, I can't recall much about it.
"`Q. Can you tell us what the purpose of the paper was? A. Yes, adoption papers.
"`Q. Did it have anything to do with surrendering the child for adoption by Mr. and Mrs. Tip Goodman? A. Yes.
"`Q. Did it say that? A. Well, it was to that effect, adoption papers.
"`Q. Did you understand that that was the purpose of the papers? A. Yes, sir.
"`Q. Can you remember any of the words in the papers? A. No. All I can remember is my name and Ruby Lee Goodman's name.'
"Mrs. W. M. Gibbs, the former Miss Willie Mae Grafton, was employed as a secretary by W. C. Braden during the year 1929. She performed stenographic services in connection with the preparation of this act of adoption and executed it as one of the witnesses. She testified that Judge Braden did `complete adoption proceedings' for Mr. and Mrs. Goodman during 1929 or 1930, and that she remembers it particularly because it was the only adoption proceeding prepared in that office while she was employed by him.
"After considering all of the evidence, and particularly the testimony to which reference has been specially made, this Court concludes that the instrument prepared by Mr. Braden in 1929 did specifically provide that Mr. and Mrs. Goodman were adopting defendant as their child and that defendant's mother, Ruby Estelle Harrington, concurred in and consented to the adoption. The evidence shows that the act of adoption was properly prepared and executed, and otherwise that there was a strict compliance with the provisions of Act 48 of 1924. Upon the completion of that act defendant became the legally adopted daughter of Severinus Goodman, Jr., and his wife, and the Court finds that she was his legally adopted daughter at the time of his death."
Furthermore, the plaintiffs may not complain at this late date of any irregularities in execution of the adoption instrument, or even of any failure on the part of the natural father to sign. When the Legislature by Act 46 of 1932 superseded notarial by judicial adoption proceedings, Section 13 of that statute provide that all prior adoptions "are hereby confirmed, approved and validated", but allowed a six-month period for the institution of actions to set aside adoptions for the following specific reasons only:
1. Lack of an authentic act;
*433 2. Lack of necessary parties signing adoptions.
In Succession of Pizzillo, 223 La. 328, 65 So.2d 783, our Supreme Court stated that a 1924 notarial adoption was validated and could not be attacked following expiration of the six-month period after effective date of the 1932 Act, even though neither of the natural parents of an illegitimate child had signed. See also LSA-R.S. 9:440.
Counsel for plaintiffs in their brief offer the additional arguments which evidently were not made in the Lower Court, as follows:
"The defendant introduced in evidence a certificate of Baptism marked D1 for identification, a notification of birth registration marked D2 for identification and a birth certificate of defendant marked D3 for identification all of which are inconsistent with the theory that the defendant was adopted. In other words, in three (3) different written instruments that were signed and executed shortly after the birth of the child, Mr. and Mrs. Goodman said that the defendant was born of their marriage. In none of the documents introduced by the defendant is there any indication whatsoever that she was their adopted child.
"Further the plaintiffs offered and filed in evidence, marked P3 for identification, the petition and affidavit of verification signed by the defendant in connection with the Succession of Severinus Goodman, Jr., who was supposed to have been the adoptive father of the defendant bearing number 6824 on the probate docket of the Fourteenth Judicial District Court in and for Calcasieu Parish. Their verified petition reads as follows: `That the decedent never adopted any children; that he was married but once and then to your first named petitioner, Mrs. Lena Goodman, born Marshall; that of this union only one child was born, namely:
"`(1) Mrs. Ruby Lee Camalo, born Goodman, wife of Frank Camalo, of the full age of majority and a petitioner.'
"The affidavit of verification was signed by Mrs. Lena Marshall Goodman and Mrs. Ruby Lee Camalo to the effect that they were the petitioners and that they had read said petition and all of the allegations of fact contained therein are true and correct.
"The plaintiffs submit that the actions of Mrs. Lena Goodman from the date of the birth of the defendant, during all of the child's life, are entirely inconsistent with her testimony given on the trial of this case and certainly are evidence of the fact that the child was never adopted, and when her actions are considered along with the evidence to the effect that everyone whoever had a copy of the alleged act of adoption, including the lawyer who was supposed to have prepared the same, has lost or misplaced their copies, plaintiffs are convinced that no act of adoption was ever executed."
Defendant's testimony offers a satisfactory reason or explanation of the certificate of birth and of baptism and notification of birth which stated that she was born of the marriage of Severinus Goodman, Jr., and his wife, Mrs. Lena Marshall Goodman. She testified that she never knew until this action arose that she was an adopted child. Both her adopted parents had always insisted that she was their own child, although children at school on occasions had told her otherwise. In view of the evidence which is so convincing as to leave no doubt that she actually was an adopted child, it is apparent that her adopted parents did everything in their power to keep their knowledge of this fact from the defendant.
As to the petition and affidavit of verification signed by the defendant in connection with the Succession of Severinus Goodman, Jr. it is shown that at that time there was no question in her mind but that she was the natural child of Severinus Goodman, Jr. and his wife, and it was natural, therefore, for her to sign such an affidavit.
The actions of Mrs. Lena Goodman from the date of her intention to adopt the defendant are consistent in one respect. She, as well as her husband, were evidently *434 determined that this child, the defendant herein, should be considered as their own and in order to do this they kept the fact of her adoption from her until this litigation arose, as well as obtaining a birth certificate stating that she was a child of their marriage.
For the above reasons, the judgment of the District Court is affirmed.