CULPEPPER, Judge.
Plaintiff-appellant, Maurice L. Crum-packer, brought this suit to be recognized as an adopted child and forced heir of Milo Spalding and Dora H. Spalding and as such, the owner of an undivided one-sixth interest in their respective estates.
On October 5, 1914, Milo Spalding and his wife, Dora Spalding, appeared before a Notary Public and two witnesses and signed an act in which they declared that “they have adopted and do by these presents formally adopt as their own child, Maurice Lorane Crumpacker, who is nine years of age, whose parents are to appearers unknown, * * * This same act was also signed by a Joseph J. Crumpacker, who stated that he had raised Maurice Crum-packer from infancy, and that he gave his consent and concurrence to the adoption. This instrument was recorded in Jefferson Davis Parish. The natural parents of the child, being unknown, did not appear in the instrument to give their consent.
The plaintiff resided with the Spaldings for a few months following his adoption and then returned to Mr. Crumpacker. Shortly thereafter by a second instrument styled “Act of Adoption”, and dated September 11, 1916, Joseph J. Crumpacker declared that he “has adopted and does by *626 this act and these presents formally adopt as his own child Maurice Lorane Crum-packer, * * * Also appearing in this same act were Milo Spalding and Dora Spalding who declared that “their consent to this adoption they do freely and voluntarily give; that is, that Maurice Lorane Crumpacker shall be from now and henceforth considered the child of Joseph J. Crumpacker, * * * This instrument was also recorded in Jefferson Davis Parish.
The plaintiff alleges that the probate proceedings entitled Succession of Milo Spald-ing are in error in that he was not recognized as the adopted child and forced heir of Milo and Dora Spalding. Defendants, all of whom are the natural children of the Spaldings, have denied that the plaintiff is the legally adopted child of Milo and Dora Spalding.
The law pertaining to adoptions in this State at the date pf both of the above-described Acts of Adoption, was Act 31 of 1872 which provided:
“Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened that any person above the age of twenty-one years shall have the right, by Act to be passed before any parish recorder or notary public, to adopt any child under the age of twenty-one years; provided, that if such child shall have a parent or parents, or tutor, that the concurrence of such parent or parents or tutor shall be obtained, and as evidence thereof shall be required to sign said act.”
The purported adoption of the plaintiff by the Spaldings did not meet the statutory requirements quoted above in that it recited that the parents of the plaintiff were unknown and they, of course, did not appear in the instrument to give their consent, nor was a tutor appointed to represent the minor child. The Supreme Court of this State has repeatedly held that adoption is a creature of law and that to establish the relation the statutory requirements must be strictly followed, otherwise the act of adoption is an absolute nullity. Succession of Pizzatti, 141 La. 645, 75 So. 498; In re Brand’s Estate, 153 La. 195, 95 So. 603; State ex rel. Monroe v. Ford, 164 La. 149, 113 So. 798; Hardy et al. v. Mobley, 183 La. 668, 164 So. 621; Owles v. Jackson, 199 La. 940, 7 So.2d 192; Green v. Paul, 212 La. 337, 31 So.2d 819.
As there is no dispute that the provisions of the statute were not complied with, the purported act of adoption by the Spaldings is an absolute nullity unless it can be said that Act 46 of 1932 validated what had theretofore been an invalid act. Section 13 of the 1932 act provided, inter alia, that all prior adoptions were validated where the natural parents did not appear to consent to the adoption and read as follows:
“That any and all adoptions heretofore made, be and they are hereby confirmed, approved and validated, and that any action to set aside or annul any act of adoption made prior to the passage of this act shall be prescribed after the lapse of six months from and after the promulgation of this act; but this prescriptive period shall apply solely to actions having the purpose of setting aside and annuling acts of adoption by reason of such adoptions not having been effected by an authentic act, but by private act before witnesses and acknowledge, or that all necessary parties did not sign the act of adoption.”
The Supreme Court in the Succession of Pizzillo, 223 La. 328, 65 So.2d 783, 786, held:
“Section 13 of Act 46 of 1932 does not authorize the adoption of children without the consent of the natural parents, it merely validates any prior acts in which consent had not been obtained in writing, provided interested parties fail to file Suit to set such acts aside *627 within six months from the promulgation of the statute.”
The Pizzillo case, supra, was followed by the Supreme Court in Succession of Williams, 224 La. 871, 71 So.2d 229, and Lyons v. Goodman, La.App., 78 So.2d 424. These cases are strongly relied on by the appellant in support of his argument that the act of adoption by the Spaldings has been validated by the 1932 act as there was no proceedings instituted to have the adoption set aside. However, the defendants contend that the above-cited cases are in-apposite because in 1916, the Spaldings surrendered the child back to Joseph J. Crum-packer from whom they had acquired him. This surrender was prior to the effective date of the 1932 Legislative Act. Following the surrender of plaintiff by the Spald-ings back to Joseph Crumpacker, he never again had any contact with them.
A very similar situation arose in the case of Owles v. Jackson, supra, where the Court was called upon to determine the validity of two purported adoptions executed in the year 1918. In that case, as in this, the natural parents of the minor children to be adopted did not sign the adopting acts. The facts of the Owles case show further that in 1921 and 1926 respectively the natural mothers of the adopted infants requested that the children be released to their custody. By Notarial Acts the Owles surrendered the children back to their mothers and never thereafter contacted them. In 1940 Mr. Owles filed suit against the two adopted persons to annul and set aside the two purported acts of adoption. In discussing the adopted children’s contention that Owles could not set aside by convention the status they had acquired as a result of the acts of adoption, the Supreme Court held:
“The answer to that argument is that they did not acquire the status of adopted children for the reason that the purported acts of adoption were absolute nullities. Neither the plaintiff and his wife nor the parents of the children were bound by the provisions of the acts. Nobody was bound. The cancellation or setting aside of the purported acts of adoption was not made at the suggestion or request of plaintiff and his wife, but at the suggestion of the parents of the children, who had not made themselves parties to those acts. These parents had a perfect right to demand the custody of their children, and this they did. The children not having been legally adopted, plaintiff and his wife had no legal right to keep them. They surrendered them to their parents when called for, and to evidence the surrender, they signed the notarial acts above referred to. They did voluntarily what they could have been compelled to do through judicial process.” [199 La. 940, 7 So.2d 196.]
In discussing the effect of the 1932 act, the Court said:
“The provisions of Act 46 of 1932 have no application to these cases, for the reason that, at the time it was adopted, the purported acts of adoption had already been set at naught at the suggestion and request of the parents of the children, acquiesced in by plaintiff and his wife. There was no act of adoption to be ratified in either case.”
The only possibly material difference between the present case and the Owles case is that in the Owles case the children were released to their natural parents whereas in the present case, the natural parents being unknown, the child was released by the Spaldings to Mr. Crum-packer who had raised plaintiff from infancy and from whom the Spaldings had acquired him. In our opinion this factual distinction does not render inapplicable the law of the Owles case that the parties to such a purported, but invalid, act of adoption could by convention nullify its effect prior to the passage of Act 46 of 1932.
*628 For the reasons assigned, the judgment appealed from the lower court is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.