132 So.2d 875

**Maurice L. CRUMPACKER**

v.

**Ira J. SPALDING et al.**

No. 45543.

June 29, 1961.

Rehearing Denied Oct. 4, 1961.

Lestage & Arnette, Knight & Knight, Herschel N. Knight, Jennings, for appellant.

Clarence E. Romero, Welsh, for appellees.

HAWTHORNE, Justice.

Maurice L. Crumpacker, alleging that he was an adopted child of Milo and Dora Spalding, both deceased, instituted this suit to be recognized as a forced heir of Mr. and Mrs. Spalding and to be decreed the owner of an undivided one-sixth interest in their estates, a tract of land in Jefferson Davis Parish, Louisiana. Named as defendants were the children and grandchildren of the Spaldings.

The lower court denied plaintiff's prayer to be recognized as an adopted child and forced heir of the Spaldings, and dismissed his suit. The Court of Appeal affirmed this judgment (126 So.2d 625), and on application of plaintiff this court granted a writ.[1]

On October 5, 1914, Milo Spalding and his wife, Dora Spalding, by notarial act in the presence of two witnesses declared that, availing themselves of the laws of this state relative to adoption, they adopted as their own child Maurice Lorane Crumpacker. The act recited that the child at the time was nine years of age, and that since he was one or two days old he had been reared by Joseph J. Crumpacker and

his wife, Diadem Crumpacker, as their child. Joseph J. Crumpacker, who was a party to this act, stated that his wife Diadem was dead, that all statements of fact found in the act of adoption were true and correct, and that he freely and voluntarily gave his consent to the adoption of the child by the Spaldings.

About two years later, on September 11, 1916, Joseph J. Crumpacker by act before a notary and two witnesses adopted Maurice L. Crumpacker. Also parties to this act were Milo and Dora Spalding, who stated "that their consent to this adoption they do freely and voluntarily give; that is that Maurice Lorane Crumpacker shall be from now and henceforth considered the child of Joseph J. Crumpacker and as evidencing said consent they do sign these presents".

Both of these acts were duly recorded in Jefferson Davis Parish. The child's natural parents did not sign or execute either of these acts as evidence of their consent to the adoption.[2]

All parties to these acts of adoption are now dead, and the only evidence we have of the circumstances under which the instruments were executed is that of plaintiff himself. He stated that he was born in 1904 or 1905; that he lived with the Crum-

---

1. After the judgment rendered by the Court of Appeal plaintiff died, and Mrs. Ardeen King, his daughter and sole heir, has by order of this court been substituted as plaintiff-relator.

2. The act of adoption by the Spaldings recites that the parents of the child were unknown to appearers. There is nothing in the record disclosing that the parents were dead.

packers from the time he was two days old until he was adopted by the Spaldings in 1914, when he was about 10 or 11 years old;[3] that he lived with the Spaldings a short time, probably a year or a year and a half, and then was sent back to the Crumpackers. Evidently a short time after his return he was adopted by Joseph Crumpacker, as set out above. Plaintiff stated that within a year he ran away to Lake Charles and from there went on to Texas, where he had lived ever since. From his testimony it is apparent that he went to Lake Charles in 1917 or 1918. After plaintiff was sent back to the Crumpackers in 1915 or 1916, he never visited the Spaldings or had anything to do with them, or they with him, and he never inquired about them or heard anything from them. He stated that in June or July, 1957, he was informed of the death of the Spaldings by a Mr. Thompson[4] who found him in Texas, asked whether he had been adopted by the Spaldings, and said that if he had, there was a possibility that he was entitled to something from their estates. He instituted the present suit in December, 1957.

At the outset it is well to note that plaintiff does not contend that he was a foundling—that is, a child whom persons from charity have received and brought up (La.

Civ.Code Art. 213, now repealed) or a child whom the parents have abandoned (Walker v. Meyers, 150 La. 986, 91 So. 427; Succession of Dupre, 116 La. 1090, 41 So. 324); and neither the district judge nor the Court of Appeal considered this question since it was not an issue in the case. In any event, the evidence is insufficient to hold that he was a foundling. Plaintiff pitches his entire case on the contention that although the adoption by the Spaldings was invalid because his natural parents did not execute and sign the notarial act, it was validated by Section 13 of Act 46 of 1932.

The law of this state pertaining to adoptions in force at the time the Spaldings adopted plaintiff was Act 31 of 1872, which provided:

"* * * That any person above the age of twenty-one years shall have the right, by act to be passed before any parish recorder or notary public, to adopt any child under the age of twenty-one years; *provided,* that if such child shall have a parent or parents, or tutor, that the concurrence of such parent or parents or tutor shall be obtained, and as evidence thereof shall be required to sign said act."

---

3. The record does not disclose under what circumstances plaintiff at his birth was placed in the care and custody of the Crumpackers or from whom they obtained his custody.

4. The record does not identify Mr. Thompson or explain his interest in the case.

Under the jurisprudence of this state which has discussed this statute, if at the time of the Spalding adoption plaintiff had a parent or parents or tutor, their failure to concur in the adoption and to sign the act as evidence of their concurrence rendered the adoption an absolute nullity. In re Brands' Estate, 153 La. 195, 95 So. 603; State ex rel. Monroe v. Ford, 164 La. 149, 113 So. 798; Owles v. Jackson, 199 La. 940, 7 So.2d 192; Green v. Paul, 212 La. 337, 31 So.2d 819, 821.

In Green v. Paul, supra, it was stated:

" * * * It has been firmly settled by this court that adoption is a creature of statute; that, this being so, it is only what the law makes it and that, to establish the relation, the statutory requirements must be strictly carried out, otherwise, the adoption is an absolute nullity. * * * "5

Plaintiff concedes that the Spalding act of adoption was a nullity but contends that it was "approved and validated" by the provisions of Section 13 of Act 46 of 1932. He argues that "upon the expiration of six months from and after the promulgation of the Act of 1932, the adoption was validated and made immune from attack, for the Act specifically applies to a situation like the case at bar where all necessary parties did not sign the act of adoption".

Section 13 of Act 46 of 1932 upon which plaintiff relies provides:

"That any and all adoptions heretofore made, be and they are hereby confirmed, approved and validated, and that any action to set aside or annul any act of adoption made prior to the passage of this act shall be prescribed after the lapse of six months from and after the promulgation of this act; but this prescriptive period shall apply solely to actions having the purpose of setting aside and annuling [sic] acts of adoption by reason of such adoption not having been effected by an authentic act, but by private act before witnesses and acknowledged, or that all necessary parties did not sign the act of adoption."6

---

5. In Green v. Paul this court said that it has been held that statutes which do not provide for the consent of the natural parents are unconstitutional, and that in this state the jurisprudence is settled that consent of the natural parents is necessary as it has been either specifically required or contemplated by our statutes.

6. In Succession of Pizzillo, 223 La. 328, 65 So.2d 783, 786, appellant contended that Section 13 of this act was unconstitutional if its purpose was to validate all prior adoptions even though the natural parents did not consent thereto. She relied on 2 C.J.S. Adoption of Children § 5, p. 373, cited by us with approval in Green v. Paul, supra (see Footnote 5), wherein it was stated that statutes which do not provide for the consent of natural parents to the adoption are void as an unconstitutional deprivation of a right without due process of law. In answering this contention in the Piz-

In dismissing plaintiff's suit both the district court and the Court of Appeal relied on the case of Owles v. Jackson, 199 La. 940, 7 So.2d 192, 196, in which it was argued that Section 13 of Act 46 of 1932 barred the adoptive father's right to set aside acts of adoption. This court in the Owles case, after holding that the adoptions there being considered, made pursuant to Act 31 of 1872 but not signed by the natural parents, were absolute nullities, stated that adoption is a creature of the law and is what the law makes it, and that to establish the relationship the statutory requirements must be strictly carried out or the act of adoption is an absolute nullity; that according to the provisions of the statute the concurrence of the parent or parents had to be obtained, and that to evidence their concurrence they were required to sign the act; that the act made no exceptions, and that where the law made no exceptions, the court could make none; that since the acts were absolute nullities, the children named as being adopted did not acquire the status of adopted children, and no one, including the adoptive parents, was bound by the provisions of the acts of adoption.

We consider the Owles case full authority for the proposition that Section 13 of

Act 46 of 1932 is inapplicable in cases where the acts of adoption have been annulled and set aside by the parties to them prior to the effective date of the 1932 statute. In the Owles case there were two acts of adoption of children who were in the possession and under the absolute control of the Louisiana Children's Home Society. Each act of adoption was signed by the superintendent of this home and by Owles and his wife, who declared that they were formally adopting the child. One of these children was a child by the name of Willie Jackson. Before the 1932 statute was passed, at the request of this child's brother the adoptive parents executed a notarial act releasing all claims to the child and surrendered him to the home from which they had acquired him; and the home in turn delivered the child to the brother so that he could be taken back to his mother. In concluding that the 1932 statute was inapplicable to Willie Jackson's adoption the court stated:

"* * * *it appears that the parties concerned intended that all the ties and relationships resulting from the purported act of adoption be severed.* The record shows that Willie Jackson left the home of plaintiff and his wife more than 14 years prior to

zillo case we said that "Section 13 of Act 46 of 1932 does not authorize the adoption of children without the consent of the natural parents; it merely validates any prior acts in which consent had

not been obtained in writing, provided the interested parties fail to file suit to set such acts aside within six months from the promulgation of the statute".

the date on which the suit was instituted, and that he has never returned, and, so far as the record shows, there was no communication of any kind between him and plaintiff and his wife." (Italics ours.)

Thus the court found in the Owles case that none of the parties to the acts of adoption was bound thereby, and that it was the intention of all parties concerned to sever all ties and relationships resulting from the purported acts of adoption before the enactment of the 1932 statute.

In the instant case plaintiff acquired no status by virtue of his adoption by the Spaldings because this act of adoption was a nullity. Moreover, he was sent back to the Crumpackers in 1915 or 1916, about 16 years before the 1932 statute was passed, and shortly afterwards was adopted by Joseph Crumpacker by act which was signed by the Spaldings. Furthermore, from 1915 or 1916 up to the time this suit was filed in 1957, plaintiff did not manifest any interest in the Spaldings or they in him. There was no contact between him and the Spaldings, and he never inquired about them or heard anything from them.

Under these circumstances we must conclude that the parties concerned in the Spalding act of adoption intended, as the parties did in the Owles case, that all ties and relationships resulting from the purported act of adoption were to be severed, and this intention was manifested long before the passage of the 1932 statute. The intention of the parties in the Owles case to release all claims to the children was evidenced by notarial acts; in the instant case the adoptive parents evidenced their intention to release the child by returning him to the custody of the Crumpackers and by appearing in the notarial act by which Crumpacker adopted the child.

For the reasons assigned the judgment of the Court of Appeal is affirmed. Relator is to pay all costs.