PONDER, Justice.
Miss D. Zena Thomson died in the Parish of Calcasieu on the 8th day of May 1950 leaving an olographic will, dated November 1, 1949, which reads as follows:
“Being of sound mind I make this my last will and testament.
“I direct that all my just debts, be paid out of the estate left at my death.
“I will and bequeath unto Mary Quilty all my furniture located in her home and on her premises.
“I will and bequeath unto the Lake Charles High School all my library books including those located at Mary Quilities home with the exception of the popular fiction books which I will and bequeath unto the Carnegie Public Library in Lake Charles.
“I will and bequeath unto Isabel H. Henck all the personal effects of which I may die possessed of whatsoever kind, which shall include all my furniture, except that located at Mary Quilities, all silver, jewelry, linen dishes and all other movables property except my books.
“I have heretofore given unto my adopted son by donation and manual gifts. property far in excess of any legitime to which he might be entitled under the law.
“All the remainder and residue of my estate I leave to Isabel H. Henck.
“I appoint Gulf National Bank Executor of this my last will and Estate with seizin and with out bond..
*796 “This will is entirely written, dated and signed in my own handwriting, at my domicile in Calcasieu Parish, Louisiana, this first day of November, A.D. 1949. /s/ D. Zena Thomson.”
The will was probated and an inventory taken of the effects of the succession showing a value of $26,498.80. The executor was duly qualified and some time thereafter filed a provisional account. After this account was filed, Mrs. Rosalie Dillon Prieto, an adopted daughter of the decedent, filed a petition in the succession proceedings asking for a reduction of the bequest to Mrs. Isabel Henck, the universal legatee, to the extent it encroached on her legitime and asked to be decreed the owner of a one-fourth undivided interest in the succession. A similar proceeding was filed by Mrs. Ann McClain Butler, successor and assignee of the rights of the adopted son of the decedent, Ernest J. Butler. On trial, the lower court gave judgment in favor of Mrs. Prieto, decreeing her to be the owner of a one-fourth undivided interest in the effects of the succession and against' the -universal legatee, reducing her interest in the succession to a three-fourth undivided interest. The lower court gave judgment rejecting the demands of Mrs. Butler. Mrs. Butler has appealed from the judgment rejecting her demands and Mrs. Henck has appealed from the judgment reducing her bequest and recognizing Mrs. Prieto as the owner-of an undivided one-fourth interest in the succession.
Both of- these proceedings were consolidated in the lower court for the purpose of trial and separate judgments were rendered. They are so treated on this appeal.
The record contains considerable evidence relating to various transactions between the decedent and Ernest J. Butler. As pointed out in the reasons for judgment by the lower court, the evidence is conflicting and involves sums of money collected by Butler for Miss Thomson and money expended by Butler for her benefit. During her lifetime the decedent transferred several pieces of real estate to Butler for stated considerations. There is a dispute as to whether parol testimony, that no consideration was paid for the property, ■is admissible. The record shows that Butler received $13,000 in cash, from the proceeds' of the sale of certain property belonging to the decedent in October, 1949, some seven months before-Miss Thomson’s death, which he deposited to his account and gave Miss Thomson a note for such amount. Butler admits that he never paid the note and that it was destroyed by the decedent in his presence sometime before her death. His evidence that the $13,000 was used to reimburse monies expended by him for the decedent is very unsatisfactory. The district court arrived at the conclusion that it was not necessary to go into the various transactions between the decedent and Butler because the giving of the note was an acknowledg *798 Trent that he owed that amount and that it exceeded the amount of his legitime. It is suggested that the value of the property exceeds the value set out in the inventory. The inventory value of the property is $26,498.80. However, the effects of the succession are not of a value in excess of $34,000 as found by the trial judge. Taking $34,000 as the value of the effects of the succession, the one-fourth interest claimed by Butler would have amounted to $8,500 an amount considerably less than the $13,000 that he had received from the decedent. After careful analysis of the testimony, we have reached, the conclusion that the findings of the trial judge are correct and that the judgment should be affirmed.
The universal legatee contends that the judgment of the lower court, recognizing Mrs. Prieto as an adopted child, is erroneous. She takes the position that Mrs. Prieto. was never legally adopted because there were no witnesses to the purported act of adoption.
The act of adoption was confected on September 22, 1943, before Lucy Collins, notary public, and signed by the decedent, Mrs. Prieto, and the notary. The instrument was not witnessed nor did it purport to be signed by witnesses. At the time the instrument was executed, the law relative to the adoption of a major, Mrs. Prieto being a major at that time, was Act 169 of 1940, LSA-RS 9:461. This statute provided that “The adoption shall be effected by the execution of a notarial act signed by the adoptive parent or parents and the person to be adopted, * * This statute repealed the prior statute,’Act 44 of 1934, relating to adoption, which provided that “The adoption shall be by authentic act passed before a Recorder or Notary Public or by private act duly acknowledged by a Recorder or Notary Public, which' act shall be signed by the adoptive parent or parents and the person to be adopted”. It is significant that the later statute does not require the adoption to be by authentic act or by an acknowledged private act, both of which are 'defined in the Civil Code and are required to be witnessed. When the legislature provided that the adoption should be by notarial act signed by the interested parties without defining the words “notarial act” and without providing that it be witnessed, it is evident that the legislature did not intend that the act should be executed in the presence of and signed by witnesses. Where the legislature deliberately amends an act or repeals an act and enacts a new statute changing the provisions of the prior statute by using words conveying a different meaning, the courts are not authorized to ascribe a meaning at variance with the plain import of the language used as that would be exercising legislative functions and would in effect operate as a judicial repeal. New York Life Ins. Co. v. Burbank, 209 Iowa, 199, 200, 216 N.W. 742; State ex rel. Mittman v. Board of County Commissioners of Greene County, 94 Ohio St. 296, *800 113 N.E. 831; State ex rel. Methodist Children’s Home Ass’n v. Board of Education, 105 Ohio St. 438, 138 N.E. 865; State ex rel. Oregon R. & Nav. Co. v. Clausen, 63 Wash. 535, 116 P. 7; State ex rel. George v. Seattle, 184 Wash. 560, 52 P.2d 360; 2 Sutherland Statutory Construction, Lewis 2d Ed. 893, Section 476, 25 R.C.L. 1047, Sections 275 and 276; 36 Cyc. 1142. It is provided in Act 169 of 1940 “That no adoption by notarial act or by private act duly acknowledged of persons over the age of seventeen years, executed prior to the effective date of this act, shall hereafter be set aside, annulled or be decreed to be null, void or ineffective”. This indicates that the legislature intended to give effect to prior adoptions by notarial act. If it had intended to give effect only to adoptions by authentic act or private act duly acknowledged, it would not have used the words “notarial act” but would have used the words “authentic act”, etc., as set out in the prior statute.
It is contended that the words “notarial act” and “authentic act” have been used in many instances by the courts and others interchangeably. This is true, but in the cases cited to support this contention these statements have been made relating to contracts. Adoption creates a status rather than a contractual relation. Green v. Paul, 212 La. 337, 31 So.2d 819. Since the legislature has seen fit to dispense with the requirement that the adoption be effected by authentic act or acknowledged private act and now provides that it be by notarial act, it is evident that they did so lor a purpose and we cannot, in the absence of any statute defining a notarial act, say that the legislature intended for the act to be passed in the presence of and signed by witnesses.
The universal legatee contends that the adoption was revoked by the decedent, during her lifetime, and Mrs. Prieto. On May 30, 1945, Miss Thomson and Mrs. Prieto signed an instrument before a notary public purporting to revoke the adoption setting forth that the adoption was a mistake and not in the interest and advantage of either party thereto and that they desired to abrogate it. Under the constitution of this state, no law can be passed abolishing forced heirship and children lawfully adopted have the same rights in the successions of persons adopting them as children who are forced heirs. Section 15, Article 4 of the Constitution of 1921. It is apparent that the lawmakers have recognized that adoption creates the status similar to that of a child or forced heir. This being true, the laws relating to descendants and forced heirs are pertinent and there is no provision in our law authorizing a parent and child to abrogate by contract the relationship existing between them.
The universal legatee, who is a cousin of the decedent, contends that the lower court erred in concluding that the sale to a third person by the decedent and Mrs. Prieto of real estate which had been *802 previously donated to Mrs. Prieto was a revocation of the donations. Miss Thomson made two donations inter vivos to Mrs. Prieto. She and Mrs. Prieto joined in an act of sale transferring the property to a third person for a recited consideration. The record does not show who received the consideration. The universal legatee is under the impression that, since the value of the donated property exceeds the value of the legitime of Mrs. Prieto, Mrs. Prieto is not entitled to have the legacy reduced. It was held in Atkins v. Johnston, 213 La. 458, 35 So.2d 16 that where the donor joins the donee in a warranty deed conveying the donated property to a third person that the donation is tacitly revoked. In the absence of any evidence that the donee received any part of the proceeds derived from the sale of this property, we are in no position to say that any amount of the proceeds derived therefrom should be added to the aggreate of the property belonging to the decedent at the time of her death in determining the disposable portion.
For the reasons assigned, the judgment of the lower court rejecting the demands of Mrs. Ann McClain Butler is affirmed and the judgment of the lower court recognizing Mrs. Rosalie Dillon Prieto as the adopted daughter of the decedent and the owner of an undivided one-fourth interest in the succession of the decedent, and reducing the bequest of Mrs. Isabel H. Henck, the universal legatee, to an undivided three-fourth interest in the succession is affirmed. The cost of the two suits to be equally divided between Mrs. Isabel H. Henck and Mrs. Ann McClain Butler.