73 So.2d 800 (1954)
225 La. 674
Succession of GAMBINO.
No. 41391.
Supreme Court of Louisiana.
April 26, 1954.
Rehearing Denied May 31, 1954.
*801 Dreyfous & Kalinski, George A. Dreyfous, Edward A. Kalinski, New Orleans, for appellant.
Byrnes & Wallace, New Orleans, for plaintiff-appellee.
McCALEB, Justice.
Vincenzo Gambino died in the city of New Orleans on October 19, 1952, leaving a last will under which he bequeathed all of his property to his second wife, Rosa Viviano, and appointed her testamentary executrix of his estate. In due course, his succession was opened and his will, in nuncupative form by public act, was filed, registered and executed. Thereafter, Salvador Gambino petitioned the court for a reduction *802 of the legacy to the widow, alleging that he was the adopted child and forced heir of the decendent entitled, as such, to receive his legitime of one-third of the separate property and one-sixth of the community property. The widow opposed this demand contending that, although Salvador Gambino had been adopted by her deceased husband and his first wife, he was subsequently re-adopted by his natural parents under judgment of the Juvenile Court which effectively rescinded and cancelled the previous adoption.
The facts of the case are as follows. Salvador Gambino, born on April 29, 1924, is issue of Francisco Gambino and his wife, Marie Manale. These parties lived in the same household with Vincenzo Gambino (brother of Francisco) and his first wife, Agatha Maturano. By notarial act dated March 23, 1932, Vincenzo Gambino and Agatha Maturano adopted Salvador Gambino. Following the death of his first wife, Vincenzo Gambino married Rosa Viviano, his universal legatee. On July 12, 1939, Francisco Gambino and his wife instituted proceedings in the Juvenile Court for the adoption of Salvador. Vincenzo Gambino filed an affidavit in those proceedings consenting to the adoption of his child by the blood parents. Thereafter, conformable to Act No. 428 of 1938, the adoption procedural law then in effect, a final judgment was signed decreeing Salvador to be the adopted child of his natural parents.
The widow legatee contends in the main that this judgment of adoption, which was entered on March 21, 1940, had the effect of abrogating the legal tie of father and child that previously existed between Salvador and her husband, Vincenzo Gambino, in view of Section 6 of Act No. 428 of 1938 providing, in part, that:
"Upon the entry of the final order of adoption, the said child shall cease to be heir of its parents, whose obligations toward it for support shall also cease, and the child shall at the same time become an heir of its adoptive parents to the extent provided by existing law."
Counsel for Salvador Gambino challenged the constitutionality of the above quoted provision in limine litis, asserting that it is violative of Section 16 of Article 3 of the Constitution in that it deals with substantive matters not indicated in the title of Act No. 428 of 1938 and also that it offends Section 16 of Article 4 of the Constitution as it attempts to effect an abolition of the adopted child's right as forced heir of his parents.
After a hearing in the lower court, the judge resolved that the assailed provision of the statute was invalid, being in derogation of Section 16 of Article 3 of the Constitution. He accordingly recognized Salvador Gambino as the forced heir of the decedent and, as such, entitled to receive one-third of the separate and one-sixth of the community estate. The widow-legatee has appealed.
Since it is conceded by the litigants that the two adoptions of Salvador Gambino are valid, the principal question for decision is whether his second adoption by his natural parents produced the legal consequence of annulling for all purposes the status which had been previously acquired by him as the adopted child of Vincenzo Gambino.
Adoption in Louisiana is a creature of statute and, therefore, it is only what the law makes it. Succession of Pizzati, 141 La. 645, 75 So. 498; In re Brands' Estate, 153 La. 195, 95 So. 603; Succession of Brand, 162 La. 880, 111 So. 267; State ex rel. Monroe v. Ford, 164 La. 149, 113 So. 798; Hardy v. Mobley, 183 La. 668, 164 So. 621 and Owles v. Jackson, 199 La. 940, 7 So.2d 192. It is defined to be the establishment of the relationship of parent and child between persons not so related by nature and the act of adoption creates a status and not a contractual relation. 2 C.J.S., Adoption of Children, § 1, pp. 367, 368; Green v. Paul, 212 La. 337, 31 So. 2d 819 and Succession of Thomson, 221 La. 791, 60 So.2d 411.
*803 When the status of parent and child was created by the adoption of Salvador Gambino by decedent and his first wife, certain legal rights and obligations ensued, among them being the establishment of Salvador as a legitimate child in the estates of his adoptive parents under Article 214 of the LSA-Civil Code, the substantive law on this subject.[1] This article does not provide how this relationship once created can be undone. Therefore, unless the status of parent and child can be deduced to have come to an end for all purposes by the judgment in 1940 granting to Salvador's natural parents the right to readopt him as their own child, his forced heirship in the succession of the decedent must, perforce, be recognized, as it was avouched by Article 214 of the LSA-Civil Code, as amended by Act No. 454 of 1948, and by Section 16 of Article 4 of the Constitution, as amended by Act No. 318 of 1944, declaring in part that "* * * children lawfully adopted shall have the same rights in the successions of the persons adopting them, as children who are forced heirs * *".
With these principles in mind, we address ourselves to a discussion of Act No. 428 of 1938 under which the judgment of adoption in favor of the natural parents of Salvador Gambino was entered. That Act, as aforesaid, contained a clause in Section 6 declaring that, upon the entry of the final order of adoption, the child shall cease to be the heir of its parents.[2] The trial judge thought that this provision had no reasonable relation to the aim of the legislation because it dealt with the legal effect of adoptions when the title of the law only signified that its object was to provide for the procedure for the adoption of persons under 17 years of age. Accordingly, he held the clause inimical to Section 16 of Article 3 of the Constitution prescribing that "Every statute enacted by the legislature shall embrace but one object, and shall have a title indicative of its object".
The cases are legion in which attacks have been levelled at laws or provisions thereof which were allegedly broader than the declared object in their title. These authorities have laid down a pattern or test to be applied in ascertaining whether an assailed enactment violates the Constitutional prohibition. Thus, it has been said that it suffices if the title, in general terms, directs attention to the purpose of the enactment, it being well settled that a title of an act need not be a synopsis of its contents and that it is not requisite that all provisions in the body of the law, germane to its declared object, be expressed in the title. A few of these cases are Peoples Homestead & Savings Ass'n v. Masling, 185 La. 800, 171 So. 36; State v. Martin, 192 La. 704, 189 So. 109; Jackson v. Hart, 192 La. 1068, 190 So. 220; Buchler v. Fourroux, 193 La. 445, 190 So. 640; Airey v. Tugwell, 197 La. 982, 3 So.2d 99; Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508; Stewart v. Stanley, 199 La. 146, 5 So.2d 531 and Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49.
The title of Act No. 428 of 1938 declares, in substance, that it is a law providing for the method and procedure of adopting children under 17 years of age by the institution of proceedings in the Juvenile Courts; for the entry of an interlocutory decree awarding temporary custody of the child; for the entry of an order of final adoption; for the changing of the name of the person adopted; for investigations and reports by the State Department of Public Welfare; for the making of new records of birth by the local Registrar; for appeals from judgments rendered in accordance with the act; for the repeal of *804 the former law, Act No. 233 of 1936, and all other laws inconsistent therewith.
We find nothing whatever in this title indicating that the body of the act might contain provisions dealing with the legal effect of adoptions granted by the Juvenile Court, and certainly not the slightest inkling that the adoption is to deprive the child of his right of forced heirship in the estates of his blood or other lawful parents, which has been already vouchsafed to him by the laws and Constitution of this State. This being so, it can hardly be said that the clause contained in Section 6 of the Act is germane or cognate to its title, signifying its purpose to be the establishment of the appropriate procedure for the adoption of children under 17 years of age.
In this connection, we think that the very fact that the title and the body of the Act deals only with the adoption of children under 17 demonstrates that the intention of the Legislature was to provide merely a method of adoption and not to prescribe for the legal effect produced by the status. Surely, no one would expect to find in the body of such an act provisions determinative of the legal rights resulting from the adoption of children under 17 which would not conform to the general law, Article 214 of LSA-Civil Code, which provides the legal consequences of adoption as between adoptor and adoptee, irrespective of the age of the latter.
Then, too, it is reasonable to infer that the assailed clause was evidently inserted in Section 6 of the Act without the Legislature realizing that it was incongruous to the purpose and intent of the statute. This is evidenced by the fact that four years later, when a new adoption law was enacted, Act No. 154 of 1942, which amended and repealed Act No. 428 of 1938, Section 6 was reenacted as previously written, except for the deletion of the objectionable provision, which has never appeared in any of the many adoption procedural acts passed either before or since Act No. 428 of 1938.
Forasmuch as we approve the judge's ruling that the clause relied on by appellant is violative of Section 16 of Article 3 of the Constitution, it is not essential that we consider appellee's other contention that the provision is inimical to Section 16 of Article 4 of the Constitution. With the elimination of this clause from the Act, it would appear that appellee's subsequent adoption by his natural parents did not change his legal status as the forced heir of the decedent.
Nevertheless, counsel for appellant maintain that the judgment in favor of appellee should be set aside for other reasons. One of their claims is that, by virtue of the peremption provided by Section 14 of Act No. 154 of 1942, appellee is without right to challenge Act No. 428 of 1938 because he failed to bring his suit within six months from the effective date of the 1942 statute. There is no merit in this contention. The peremption provided for applies to actions to annul acts or decrees of adoption. Appellee is not challenging the decree of adoption granted to his blood parents in 1940 by the Juvenile Court. He admits the validity of that decree. His position is simply that the subsequent adoption did not abrogate his legal right to inherit from decedent as his adopted son and forced heir.
The principal contention advanced by counsel for appellant seems to be that the adoption judgment entered by the Juvenile Court in 1940 effected, by operation of law or equity, a cancellation of the status of father and child between appellee and decedent.
We do not find substance in this position because, once the status of parent and child has been established, it cannot be undone except by legislative act. And even a legislative act, which would deny to the child forced heirship already acquired, might offend Section 16 of Article 4 of the Constitution, as amended, declaring that "No law shall be passed abolishing forced heirship" and further providing *805 that children lawfully adopted are forced heirs.[3]
In Succession of Thomson, 221 La. 791, 60 So.2d 411, 414, a Mrs. Prieto was claiming her legitime as the adopted daughter of the deceased. The universal legatee contended that, inasmuch as the adoption of Mrs. Prieto by Miss Thomson had been revoked by notarial contract of the parties, Mrs. Prieto no longer had any claim as a forced heir. The court rejected this contention, stating:
"Under the constitution of this state, no law can be passed abolishing forced heirship and children lawfully adopted have the same rights in the successions of persons adopting them as children who are forced heirs. Section 16 Article 4 of the Constitution of 1921. It is apparent that the lawmakers have recognized that adoption creates a status similar to that of a child or forced heir. This being true, the laws relating to descendants and forced heirs are pertinent and there is no provision in our law authorizing a parent and child to abrogate by contract the relationship existing between them".
So we say in the case at bar that the judgment of the Juvenile Court granting to the blood parents of appellee the right to adopt him, whatever may be its other consequences, did not have the effect of depriving him of his already acquired status of forced heir of his adoptive father, Vincenzo Gambino.
The judgment is affirmed.
HAMITER, J., dissents with written reasons.
HAMITER, Justice (dissenting).
Even assuming the unconstitutionality of the questioned provision of Section 6 of Act No. 428 of 1938, I am of the opinion that Salvador Gambino was not a forced heir of Vincenzo Gambino (his uncle, his adoptive parent at one time, and the decedent).
Article 4, Section 16 of the Louisiana Constitution (as amended), of course, declares that "* * * children lawfully adopted shall have the same rights in the successions of the persons adopting them, as children who are forced heirs * * *." However, the receiving of such rights is conditioned on the demise of the adopter, for the provision refers to "successions" and, also, it is elementary that the right to inherit is determined only at the instant of death. Too, necessarily, such provision presupposes the existence of the adoption relationship on the occurrence of the death.
Here, Salvador was not the adopted child of Vincenzo when the latter died, the previously existing adoption relationship between those two having come to an end on the child's readoption by his blood parents. And this readoption, clothed with all of the formalities and requirements of law which included judicial approval, effectively rescinded and nullified the previous adoption and terminated all attendant rights, duties and obligations. This conclusion is obviously correct when it is considered that adoption, according to our *806 settled jurisprudence as pointed out in the majority opinion, is merely a creature of statute and is only what the law makes it and, further, that there has been no statutory provision enacted purporting to continue the effects of adoption following a dissolution or termination of that status, such as was done respecting a continuation of heirship as to blood parents in LSA-Civil Code Article 214.4 which, in recognition of the mentioned jurisprudence, states that "The adopted and his lawful issue shall continue to be heirs of the blood parents of the adopted as if there had been no adoption."
For these reasons I respectfully dissent.
NOTES
[1] Article 214 was amended by Act No. 454 of 1948, which added eight new paragraphs thereto providing more comprehensively for the various effects, inheritance and otherwise, ensuing as a result of adoption. LSA-C.C. arts. 214.1 et seq.
[2] Meaning, of course, its blood parents but obviously broad enough in its scope to include adoptive parents as well.
[3] Counsel for appellants suggest that such a conclusion would be improper as the right to inherit is determined at the instant of death and that, therefore, it is immaterial whether the status of legitimate child was previously acquired. In support of this position, they cite Hughes v. Murdock, 45 La.Ann. 935, 13 So. 182, wherein the case of Hyde v. The Planters' Bank of Mississippi, 8 Rob. 416, was approvingly quoted to the effect that no one can acquire vested rights in any existing legal capacity and that a forced heir in expectancy may, by a new law, be declared incapable of succeeding to the intestate succession of his parent.

The statement relied on in the cited case was proper under the Constitution of 1868, the provisions of which were there under consideration. But it seems obvious that the dictum would be wholly without foundation if applied to a case coming under the present Constitution of 1921 which contains a prohibition against the abolition of forced heirship.