SCHOTT, Judge
(dissenting).
The plain, unambiguous language of LSA-R.S. 9:461 prescribes that adoption between majors is accomplished by “execution of a notarial act signed by the adoptive parent . . . and the person to be adopted.” Although the act of adoption in this case was not signed by the adoptee the majority opinion concludes that the adoption was valid because there is no authority in the law or jurisprudence to the effect that parties to an adoption cannot sign through a mandatary. While there are no cases directly on point I believe'the jurisprudence and reason dictate the opposite result.
A leading case on adoption was Succession of Pizzati, 141 La. 645, 75 So. 498. The court there considered the validity of an adoption between majors by notarial act at a time when there was no statutory authority for such and the only statutory method for adoption was by judicial proceedings which the court found inapplicable to adoptions between majors. Confronted with Civil Code Art. 214 which then authorized adoption of majors but which made no provision for any form of proceedings for effecting such an adoption, the court concluded that the adoption was null because an adoption “can be effected only in some mode expressly provided by law . . . ” in reaching this conclusion other principles were established which are of paramount importance to our consideration of the problem before us. The Court said:
“Adoption is not a contract, and is not of natural law at all. The breath of the Legislature creates it out of nothing. It is wholly and entirely artificial; it is precisely and exactly what the Legislature makes it. The particular adoption which article 214 has reference to is declared by that article itself to have the effect of investing the adoptee with ‘all the rights of a legitimate child in the estate’ of the adoptant, except that it ‘shall not interfere with the rights of forced heirs.’ So that it makes an heir of a person who is not such; disturbs the order of succession except as forced heirs. Such being the case, the parties to it are not the sole parties in interest, but all the legal heirs who are to be displaced by it have an interest; and, as the matter involves the status of heirs, society itself has an interest. This status, once established, is entitled to recognition, or, in other words, to have full effect, in all countries where adoption is allowed. Succession of Caldwell, 114 La. 195, 38 South. 140, 108 Am.St.Rep. 341. It is not a thing of gradual growth, but springs into full, final, irrevocable existence the moment the ceremonial which is to bring it about has been gone through with, whatever that ceremonial may be.
“The legal status is a result of the adoption; it is not the adoption itself, for the adoption is the act, the outward manifestation or ceremonial, by which it is brought about. A statute which authorizes the result to be brought about, but does not provide the means of bringing that result about, or, in other words, authorizes adoption without providing the means of effecting it, is defective, and can have no operation. Such a statute is in the same condition as those constitutional provisions which, for the same reason of not having provided the means of being carried in effect, are held not to be self-operative.” (Emphasis added)
Several pertinent principles emerge from the foregoing: First, an adoption can be *893 accomplished only in the manner provided by law. In Succession of Bush, 222 So.2d 642 (La.App. 4th Cir. 1969) and Succession of D’Asaro, 167 So.2d 391 (La.App. 4th Cir. 1964), this Court held that adoption is a creature of the law and unless statutory requirements are strictly carried out the act of adoption is an absolute nullity.
Second, adoption is not a mere contract between two persons but it is the imposition of a legal status on the parties by means of a “ceremonial” prescribed by the legislature.
Third, it is irrevocable. This feature of adoption was dramatically demonstrated in Succession of Thomson, 221 La. 791, 60 So.2d 411, where two majors entered into an adoption and less than two years later they signed a notarial act purporting to revoke the adoption, and the court held that the revocation was ineffective and that the parties could not abrogate by contract the relationship which existed between them as a result of the adoption.
The easy disposition of this case would be to hold that the strict construction of the statute eliminates the possibility of any of the parties signing the act of adoption through an agent, but perhaps this approach is overly simplistic.
In Succession of Pizzati the Court attached much significance to the “ceremonial” which the legislature had prescribed in order for an adoption to take place. The Court emphatically rejected the idea that an adoption is a matter of a contract between two persons by which they agree upon reciprocal rights and obligations. There it was said that the adoption is “the outward manifestation” by which the new legal status of the parties is brought about in much the same way as a marriage ceremony changes the status of the parties. The Court also distinguished adoption in that it is not something that gradually comes about but it “springs into full, final, irrevocable existence the moment the ceremonial” is conducted. When these things are considered it seems that adoption is a step more solemn and serious than any other which might be voluntarily undertaken by consenting majors. Marriage may be dissolved, a will may be revoked but an adoption can never be undone.
Consequently, the procedure undertaken by the adoptee here is necessarily repugnant to the statutory scheme for accomplishing an adoption. Because of the solemnness of the step it is essential that the consent of the two parties be simultaneously given in the presence of a notary. An opposite conclusion on this point leads to consequences which were certainly intended by the legislature to be avoided. When John Caldas signed the power of attorney authorizing an agent to sign the act of adoption he did not become the adopted child of decedent herein and at best his act of procuration constituted an intention to be adopted. When the decedent appeared before the notary with Caldas’ agent some ten days later there could be no expression from Caldas of his intention to be adopted at that time. What if he had changed his mind in the meantime? Does the majority opinion mean that his granting of a power of attorney ten days previously was clothed with the same irrevoca-bility as an act of adoption must be? If it means that such an adoption is binding so that the status of the parties is changed with attendant features, such as forced heirship and reciprocal duties and obligations of support, what if the party who gave the power of attorney were to return years later and declare that he had changed his mind between the time the power was given and the time thet act was signed by the agent? Should it follow that the same irrevocability should be attached to that adoption or should the party who gave the power of attorney be permitted to show that by the time the act of adoption was passed he no longer had the intention to take on the new status flowing from the adoption ?
*894 In Hardy v. Mobley, 183 La. 668, 164 So. 621, the court in upholding an act of adoption, said the following:
“ . . . There were present all through these proceedings a union of action, a meeting of the minds, agreement in opinion, joint approbation, consent between this husband and wife concerning one common object, viz., the adoption of the child, Jesse Wood . . . ”
While this case was concerned with other statutes and the adoption of a minor child the determination that a concurrence be “present all through these proceedings” seems applicable to the instant case. Because it cannot necessarily be said that there was a simultaneous concurrence of the wills of the adopter and the adoptee in this case for each to assume the status flowing from the adoption, the underlying purpose of the legislature in requiring that a notarial act be signed by the adopter and the adoptee was not accomplished.
Accordingly, I believe that the judgment appealed from should be reversed and the act of adoption declared invalid.
I respectfully dissent.