484 So.2d 206 (1986)
In re RLV, et ux., Applying for Adoption.
No. CJ850408.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
Rehearing Denied March 31, 1986.
*207 Phillip Dugas, Baton Rouge, for Sherry Palmer intervenor-appellant.
Larry Starns, Denham Springs, for Rodney Vulganore plaintiff-appellee.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
The plaintiffs in this adoption proceeding were granted an interlocutory decree of adoption. The natural mother of the child appeals from the judgment of the trial court overruling her objection to the adoption and granting the interlocutory decree. The names of the parties involved have been omitted in the title and in this opinion in accordance with La.R.S. 9:437.
This case involves the adoption of a four-month old infant. The child was born out of wedlock to SRP and was given the name LMP. The father's name was not specified on the birth certificate and SRP did not identify him even at the hearing held for the dual purpose of determining the merits of SRP's "Intervention in the Opposition to Adoption" and plaintiffs' petition for an interlocutory decree of adoption.
The record shows that a document, styled "Parent's Formal Act of Surrender of a Child for Private Adoption," was prepared by Larry G. Starnes, a Denham Springs attorney, who acted as Notary at the execution of the Act by SRP and her attorney, Ms. Roxie F. Goynes, in the presence of the Notary and two witnesses, six days before the infant attained the age of four months. The Act recited that SRP (1) was 22 years old, (2) gave birth to LMP on a specified date in a specified parish, (3) was executing the Act more than five days from LMP's birth, (4) "freely, voluntarily, and irrevocably surrenders the custody of [LMP] for the purpose of adoption to (sic) [RLV, et ux]," (5) "expressly consents to the adoption of [LMP] by [RLV, et ux]." The Act further recited that (1) "the effect of this Act of Surrender has been fully explained to [SRP] by Roxie F. Goynes, attorney at law, and [SRP] understands that her rights as the parent of [LMP] are to be terminated, including all rights of inheritance from [LMP]" and (2) [SRP] "fully understands that this Act of Surrender grants her irrevocable consent to the adoption of said [LMP] by [RLV, et ux], subject only to the exception of law found in LSA-R.S. 9:422.10."
The Act of Surrender, while inartistically composed and unduly repetitive, is noteworthy not by what it contains but by what it does not contain. The Act did not recite (1) the father's name or that the father's name was unknown to the mother, (2) the mother's marital status, and (3) the address of the persons to whom the child was surrendered, whether the adoptive parents or their representative. Additionally, as revealed at the hearing on SRP's opposition to the adoption, the mother was 21, rather than 22 years old, when the Act of Surrender was executed.
By certified mail, return receipt requested, SRP directed her typewritten letter to RLV, et ux, which stated, in part, that (1) on a specified date she "executed a formal act of surrender wherein I surrendered the legal custody of [LMP] to you," (2) "the purpose of this letter is to formally notify *208 you that I am hereby revocating (sic) my consent to the formal act of surrender," and (3) "I will be opposing the adoption of [LMP] by you." The letter closed with an invitation for RLV, et ux, or their attorney, to discuss the matter with Philip J. Dugas, SRP's attorney, "if you have any questions regarding the foregoing." The letter was received by RLV, et ux, less than 30 days after the Act of Surrender was executed by SRP, as reflected by the return receipt attached to SRP's Opposition and Intervention filed 33 days after the Act of Surrender was executed and 15 days after the adoption petition was filed. The letter attempting to revoke the consent was mailed seven days after the adoption petition was filed. A copy of the letter, the receipt for certified mail, and an "affidavit of mailing" were also attached to SRP's opposition and intervention.
At a regularly scheduled hearing the Trial Court heard testimony from eight witnesses, including SRP, RLV, et ux, and Ms. Roxie Goynes. The adoptive parents and SRP were represented by counsel at the hearing. The two issues the Trial Court addressed were (1) the legal sufficiency of the Act of Surrender and (2) the best interests of the infant.
The Trial Judge dismissed SRP's opposition based on the Act's alleged deficiencies, finding that "the act of surrender is [in] substantial compliance with R.S. 9:422.6," reasoning, in part, "it is immaterial that the address of the person to whom the surrender was made was ... not included, because the purpose of it is ... to raise the opposition and objection to the adoption, which was done." The Court further found that it was in the best interest of the infant to be adopted by the financially, morally and socially stable adoptive couple rather than be returned to SRP, "a tavern waitress" with a poor "history of continuity in employment over the recent years," and was "reared by [her mother] who has been accustomed to having children and surrendering [them] to other people ... [to] raise rather than raise her own children." The Court stated that SRP's "pillar to post" wanderings, combined with her continued association with a then incarcerated and convicted trafficker in narcotics, including "on again, off again" stints of living with him over a period of three years, which time included the time of LMP's conception, birth and surrender to RLV, et ux, entered into his factual finding that SRP could not provide a suitable home for the infant. The Court concluded that the evidence "overwhelmingly" preponderated in favor of the conclusion that "the best interest of the child would be served by granting to [RLV, et ux] the interlocutory decree of adoption."

ISSUES
1. Does the Act of Surrender constitute an authentic act of voluntary surrender within the purview of La.R.S. 9:422.3 through 422.13?
2. If the first issue is answered in the negative, does the Act of Surrender constitute a "notarial act" of surrender within the purview of La.R.S. 9:429?
3. Is the "authentic act" of voluntary surrender, provided for by La.R.S. 9:422.3 through 422.13 the exclusive method of effectuating a voluntary surrender of a child under the age of 17 years for private adoption?
4. Is the finding that LMP's best interests will be served by granting the adoption decree rather than returning the infant to the birth mother supported by the record as a whole?

AUTHENTIC ACT OF VOLUNTARY SURRENDER UNDER La.R.S. 9:422.3 through 422.13?
La.R.S. 9:422.3 states, in pertinent part, that "The formal act shall be evidence of a legal and voluntary surrender only if it is executed in accordance with the provisions of this Subpart." The preceding sentence in Section 422.3 authorizes the 18 year old or older parent or parents of a child to "execute an authentic act of voluntary surrender of custody of the child for private adoption." The antecedent of the term "formal act" is "authentic act" and, in *209 the context of Section 422.3, it is clear that "authentic act" and "formal act" are synonymous.
Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence. Thus a proviso usually is construed to apply to the provision or clause immediately preceding it.... Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.

Sutherland Stat. Const. § 47.33 (4th Ed., 1984).
Section 422.3 is in Part III of Title 9 of the Louisiana Revised Statutes; more precisely, it is in Sub-Part A of Part III, which Sub-Part covers the subject of adoption of minors under 17 years old. Section 421 through 441, inclusive, comprise the entirety of Sub-Part A of Part III. Section 422.3 accords great evidentiary weight to a formal act "only if it is executed in accordance with the provisions of this Subpart." It is necessary to determine whether the essential elements enumerated in Section 422.6 were included in the act of surrender, a necessary first step in determining the applicability of the strict method of communicating the parent-affiant's intention to oppose the adoption, as set out in Section 422.10. That section requires "a clear, written declaration of the revocation, made within thirty days after executing the formal act of surrender." The writing "must reasonably identify the child surrendered and the act of surrender," or in lieu of that, must have attached "a copy of the act of legal surrender." Notification must be accomplished by certified mail, return receipt requested, bolstered by proof of mailing and that it was received by the addressees, whether "the person or persons, or their representative, identified in the act of surrender[,] or their representative, identified in the act of surrender[,] to whom the custody of the child was granted."
The Act of Surrender in the present case stated the natural mother's age as 22 when she was in fact 21. In addition, the document failed to recite her marital status and the address of "the person or persons to whom the surrender" was made or the address of the representative of that person or persons, just two of the several elements made absolutely necessary by Section 422.6. Had the mother's marital status been stated, as required, that declaration would have triggered Section 422.4 which states that "if the father of the child is not indicated [on the certified copy of the child's birth certificate], the mother may sign the authentic act of surrender alone." The gross deficiencies of the Act of Surrender are probably the primary reason the surrender of the infant for adoption has been litigated this far. Had the preparer of the Act of Surrender given the care and attention which a document effectuating a private surrender for adoption deserves, because of the emotional trauma which the adoptive parents and the natural parent or parents doubtlessly experience while litigation to undo the private surrender is pending, he would have carefully analyzed Sections 422.3 through 422.13. In the exercise of good judgment, he would have made a "check list" as he analyzed the statute and utilized the check list in drafting the Act of Surrender, thereby assuring that all mandatory requirements of Sections 422.3 through 422.13 would be in the Act.
Clearly the Act of Surrender in this case does not contain all the requirements mandated by Section 422.3 through 422.13. The document is an authentic act, as opposed to a "notarial act," although it does not comply with the requirements of Sections 422.4 and 422.6. See Hardin v. Williams, 478 So.2d 1214 (La.1985).
There is no inherent right of adoption. In re Hughes, 176 So.2d 158, 161 (La.App. 4th Cir.1965). Adoption is purely a creature of statute; it is only what the law makes it. Thus it must be accomplished strictly in accordance with statutory *210 requirements. In re Ackenhausen, 244 La. 730, 154 So.2d 380, 383 (1963); In re McK, 444 So.2d 1362, 1365 (La.App. 2d Cir.1984). The strict construction of adoption statutes has been in favor of the natural parents because adoption statutes are "in derogation of the natural right of the child to its parents." Wuertz v. Craig, 458 So.2d 1311, 1314 (La.1984); Roy v. Speer, 249 La. 1034, 192 So.2d 554, 557 (1966). Our jurisprudence zealously guards the right of the natural parents to the child who is the subject of the adoption proceedings.
Since the Act of Surrender is invalid under La.R.S. 9:422.3 through 422.13, it is not "evidence of a legal and voluntary surrender" within the framework of those sections and it cannot be used as a basis for the adoption proceedings brought under those sections. We expressly disagree with the Trial Judge's statement, in giving oral reasons for judgment, that "it is immaterial that the address of the person to whom the surrender was made was ... not included" and that "substantial compliance" with Section 422.6 is sufficient for purposes of utilizing the Act of Surrender as evidence of a legal surrender. The Trial Judge did not address the Act's deficiencies of failing to state SRP's marital status and non-compliance with Section 422.4, relating to the non-indication of the father on the birth certificate. It is obvious that the Trial Judge, once having determined that the Act was in "substantial compliance" with Section 422.6, saw no problem with the marital status and the omission of the Section 422.4 requirement, the testimony by SRP at the hearing that she was not married and stating who was not the father (but not who is the father) sufficing to fill the void in the Act of Surrender. We do not believe that anything in Sections 422.3 through 422.13 authorizes the use of parol evidence to "fill in the gaps" of a document fatally defective under Section 422.6. Such a holding would do violence to the principle that adoption statutes are to be strictly construed in favor of the right of natural parents to their child.

NOTARIAL ACT OF SURRENDER UNDER La.R.S. 9:429?
Although fatally defective as an authentic act of surrender within the purview of Sections 422.3 through 422.13, does the document satisfy the requirements of Section 429, also a component of Sub-Part A of Part III of Title 9? Stated another way, is the authentic of surrender provided for in Sections 422.3, 422.4 and 422.6 the only act of surrender which can serve as a legal foundation for a private adoption under Sub-Part A of Part III of Title 9?
Section 429 has undergone several changes since it was first enacted as Section 4 of Act 154 of 1942. Section 9 of Act 228 of 1948 provided as follows:
The judge upon examining the confidential report and upon the parties being interrogated, may grant or refuse an interlocutory decree during or after the hearing hereinabove provided. The Clerk of Court shall forward a certified copy of the decree to the Department.
Section 2 of Act 268 of 1960 amended La.R.S. 9:429, left intact the two sentences quoted from Act 228 of 1948, and added the following:
... After the interlocutory decree has been granted by the judge, the withdrawal of consent by the legitimate parent or parents, by the mother or by the father who has acknowledged the child by notarial act as provided by Article 203 of the Civil Code, shall not bar a final decree of adoption.
Section 429 remained intact until 1979 when Act 686 of 1979 made a slight stylistic change in the first sentence and completely rewrote the third sentence which Act 268 of 1960 added. As amended, Section 429 presently, and when the Act of Surrender in dispute was executed, reads as follows:
The judge, upon examining the confidential report and upon the parties being interrogated, may grant or refuse to grant an interlocutory decree during or after the hearing hereinabove provided. The clerk of court shall forward a certified *211 copy of the decree to the department. The withdrawal of consent to the adoption of a child, once given in a notarial act by the parent or parents of the child, shall not bar an interlocutory decree of adoption, if the court considers the decree in the best interest of the child.

The language emphasized in the presently worded Section 429 was added by the 1979 amendment, replacing the 1960 phraseology. The term "notarial act" is used in Act 228 of 1960 and in Act 686 of 1979, although in the former it refers to acknowledgement of paternity or maternity while in the latter it refers to a notarial consent and surrender of a child for adoption.
In a thorough and scholarly Note at 44 La.L.Rev. 845 (1984), Ms. Amanda Karen Martin, made the following pertinent observations:
Louisiana has long recognized the problems inherent in a private adoption scheme in which continuing parental consent is a prerequisite. Thus, in 1932, the legislature began the first of numerous attempts to provide a framework for private adoptions that would ensure the protection of both the child and the natural parents. Act 46 of 1932 authorized private adoptions in which parental consent could be given either in an authentic act or in a private act duly acknowledged signed by the adoptive and natural parents. The Act also required that natural parents be made parties to the proceedings.
A 1938 amendment later dispensed with the notarial act as evidence of consent, and provided instead that adoption proceedings be initiated by a judicial petition presented by the proposed adoptive parents. Since this amendment[,] which aimed at ensuring the regulation of an increasing number of private adoptions, court supervision and authorization has been an integral part of the private adoption scheme. Act 228 of 1948 ultimately incorporated all changes in the adoption laws for minors under 17, and, in 1950, that act was adopted as Louisiana Revised Statutes 9:421-441. Throughout these legislative changes, the legislature emphasized the importance of the requirement of continuing consent in the private adoption law, and the jurisprudence reflected this emphasis.
. . . . .
Nevertheless, as it stood in 1960, the private adoption procedure left the adoptive parents in a precarious position. Natural parents were able to withdraw their consent after an interlocutory decree and effectively block a final decree of adoption. Natural parents could then use their necessary continuing consent as a bargaining tool in an effort to reach some kind of financial agreement with the adoptive parents. In addition, since the natural parents could revoke their consent after the interlocutory decree, many children were returned to their natural parents after considerable periods of time with their adoptive parents. These decisions were most often detrimental to the interests of the child, who had formed neither emotional nor psychological links with his natural parents.
As a result of these practical problems, the requirement of continuing consent was legislatively abrogated by Act 268 of 1960 ... This amendment represented the legislature's attempt to remedy the situation by shortening the time period within which natural parents could prevent an adoption by revoking their consent.
44 La.L.Rev. at 848-850.
Ms. Martin characterizes Act 686 of 1979, The Private Adoption Act of 1979, as "the most recent attempt by the legislature to formalize and regulate private adoption, while promoting the best interests of the child and balancing the interests of the biological and adoptive parents." She continued:
... The legislature attempted to guarantee to private adoptions some of the safeguards traditionally associated with agency adoptions.... [P]erhaps the legislature felt that the only way to ensure *212 a safe method of private adoption was to provide a method of legal surrender that further limited the possibility of revocation of consent.
A method of voluntary legal surrender was provided which eliminates the ability of natural parents to block an adoption by an arbitrary revocation of consent and ensures that the best interests of the child remain the paramount consideration in all stages of the adoption proceedings. However, if parental consent is invalid from the outset of the adoption proceedings, the consent requirement will not be met, and the adoption proceeding under... 9:422.3 will be nullified.

. . . . .
Once [Sections 422.3-.8, .10-.11] are complied with, the authentic act of surrender evidences irrevocable parental consent and automatically terminates parental rights.... [F]rom the time the authentic act of surrender is executed, custody of the child is vested in the adoptive parents named in the act.
An act of surrender that fails to meet all the requirements of a surrender as set forth in the new Act, however, is not necessarily an invalid act of surrender. The surrender may not afford the adoptive parents the advantages and protections of the procedure authorized by ... 9:422.3, but this does not mean that the surrender is invalid for purposes of other adoption proceedings authorized by state law.
44 La.L.Rev. at 850, 852. (Emphasis supplied.)
One of the adoption laws alluded to by Ms. Martin in a footnote is La.R.S. 9:404, which is located in Part II of Title 9, under the heading "Voluntary Surrender and Abandonment of Children." In re Martin, 357 So.2d 893 (La.App. 1st Cir.1978), writ denied, 359 So.2d 1301 (1978), reversed the denial of an interlocutory decree of adoption of a child by his paternal aunt and her husband several years after the natural mother abandoned him and he was reared by his paternal grandmother; the opinion is silent as to the existence of either a notarial act of surrender or an authentic act of surrender having been executed by either parent, both of whom were living when the adoption proceedings were initiated.
A recent adoption case, decided on the basis of La.R.S. 9:422.3 et seq., although correctly decided, has produced some much unneeded confusion into the law of private adoptions. The case, In re CDT, 415 So.2d 315 (La.App. 2d Cir.1982), was characterized by some bad facts, prominent among them being: (1) the natural mother executed an undated act of surrender before a notary and two witnesses before the child was born; (2) the mother executed the act in her maiden name and stated untruthfully that she was unmarried; (3) the written consent for the adoptive couple to remove the baby from the hospital when it was one day old untruthfully recited the mother was unmarried; (4) the natural mother's husband executed an authentic act of surrender, although the date of execution is not stated in the opinion; (5) neither the natural mother nor husband were represented by an attorney at the execution of the acts of surrender; (6) the adoptive parents were not identified in the act of surrender executed before the child was born; and (7) the date of the birth of the child was not stated because the date was not known at the time the act was executed. After reciting the above facts, the Court held "the act executed in the instant case is so deficient that it cannot serve as an act of surrender" and reasoned, further, that:
Even had the contents of the act of surrender complied with the requirements of LSA-R.S. 9:422.6 we find that since the act was signed earlier than the fifth day after the birth of the child, and since the surrendering parents were not represented by an attorney at the execution of the act of surrender, as required by LSA-R.S. 9:422.7, the act is without effect.
415 So.2d at 318.
After holding the act fatally defective under La.R.S. 9:422.6 and 422.7, the Court made the following observation:

*213 The legislature has provided for a specific and exclusive method by which private adoptions are to be carried out. That procedure as set forth in LSA-R.S. 9:422.3 et seq. provides for an act of surrender to be executed in the manner prescribed. ... Thus an act that fails to comply with the requirements as set forth in LSA-R.S. 9:422.3 et seq. is without effect....
415 So.2d at 318. (Emphasis supplied.)
We regard the emphasized language above to be obiter dictum. Having concluded the act of voluntary surrender was void because it was executed before the child was born, it was not necessary for the Court to proceed any further with its analysis of the many deficiencies of the document, gauged by the inflexible standard of La.R.S. 9:422.3 through 422.13.
Section 422.3 states simply that the formal act of surrender "shall be evidence of a legal and voluntary surrender only if it is executed in accordance with the provisions of this Subpart." La.R.S. 9:422.3 through 422.12, as well as Section 429, as amended, have as their common source Act 686 of 1979. The title to Senate Bill 210, which became Act 686, states, in pertinent part, that it is "AN ACT To amend Title 9 ... by adding ... new sections 422.3 through 422.12, to amend Section 432 ... by adding... a new Subsection ... C, and to amend and reenact Sections 429 and 440..., all relative to the voluntary surrender of custody of children for private adoption,..."
Sutherland's authoritative treatise on Statutory Construction, 4th Edition, makes the following pertinent observations:
§ 46.05
A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus it is not proper to confine interpretation to the one section to be construed.
It is always an unsafe way of construing a statute ... to divide it by a process of etymological dissection, and to separate words and then apply to each, thus separated from its context, some particular definition given by lexicographers and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascribed from the context, the nature of the subject matter treated of, and the purpose or intention of the... body which enacted or framed the statute or constitution. Neither clinical construction nor the letter of the statute nor its rhetorical framework should be permitted to defeat its clear and definite purpose to be gathered from the whole act, compared part with part.
. . . . .
The result is that a "clear and unambiguous" statutory provision generally is one having a meaning that is not contradicted by other language in the same act....
. . . . .
The presumption is that the lawmaker has a definite purpose in every enactment and has adopted and formulated the subsidiary provisions in harmony with the purpose. That purpose is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. This intention also affords the key to the sense and scope of minor provisions. From this assumption proceeds the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious to its manifest object, and if the language is susceptible of two constructions, one which will carry out and the other defeat such manifest object, it should receive the former construction.
. . . . .

*214 If conflict between provisions in the same act is resolvable no other way, the last provision in point of arrangement within the text of the act is given effect.
. . . . .
§ 47.01
The starting point in statutory construction is to read and examine the text of the act and draw inferences concerning the meaning from its composition and structure....
. . . . .
§ 47.02
Inherent in the use of textual considerations as resource materials for the interpretation of statutes is the problem of determining how much of the statutory context of the particular word or passage is relevant and probative for its construction....
The following is a guide for determining how much and what kinds of context are relevant and probative for statutory construction:
. . . . .
(3) Preamble interpretation. In case of doubt or inconsistency between language in the enacted part of the statute and the preamble, the preamble controls because it expresses in the most satisfactory manner the reason and purpose of the act.
(4) The whole act interpretation. Neither the preamble nor the purview controls, but the entire act must be read together because no part of the act is superior to any other part.
This latter method is the most realistic in view of the fact that a legislature passes judgment upon the act as an entity, not giving one portion of the act any greater authority than another. Thus any attempt to segregate any portion or exclude any other portion from consideration is almost certain to distort the legislative intent. ...
. . . . .
§ 47.03
. . . . .
Titles have a communicative function....
. . . . .
... [I]n ascertaining the intention of the legislature nothing is to be rejected which will assist in the clarification of ambiguous phrases. Where the title throws light on the meaning of the statute itself, it is an available tool for the resolution of doubt.
§ 51.02
It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes. Thus, they all should be construed together.

. . . . .
Statutes for the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible....
§ 51.03
Statutes are to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object....
. . . . .
... [T]he rule that statutes in pari materia should be construed together has the greatest probative force, in the case of statutes relating to the same subject matter passed at the same session of the legislature, ...
This court, in Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984), cogently reiterated the guiding principles of statutory construction, as follows:
When interpreting a law ..., the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary *215 words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of courts in the interpretation of laws to adopt a construction of the provision in question which harmonized and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker. (Citations omitted.)
. . . . .
... When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory. (citations omitted.) ...
446 So.2d at 1360. (Emphasis supplied.)
With the foregoing pronouncements from Sutherland on Statutory Construction and Bunch v. Town of St. Francisville in mind, we now proceed to analyze Act 686 of 1979 and pre-existing private adoption statutes in pari materia.
The phrases used in La.R.S. 9:422.3 through 422.12, as added by Act 686 of 1979, to describe the act of voluntary surrender, are: "authentic act of voluntary surrender" and "formal act" (§ 422.3); "authentic act of surrender" (§ 422.4); "act of surrender" (§ 422.5); "formal act of surrender" (§§ 422.6, 422.10, and 422.11); "formal authentic act of voluntary surrender" (§§ 422.7, 422.8, and 422.9); and "act of legal surrender" (§ 422.10). Section 422.13, added by Act 717 of 1981, uses the term "act of legal surrender" while Section 422.14, added by Act 877 of 1984, uses the term "act of surrender"; Section 422.14 took effect after the act of surrender in this case was executed.
La.C.C. art. 1833 defines "authentic act" as "a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed."
The Supreme Court, construing the term "notarial act" as it was used in Act 169 of 1940, an adoption statute presently found in La.R.S. 9:461, substantially changed from its 1940 posture, distinguished "authentic act" and "notarial act" in Succession of Thomson, 221 La. 791, 60 So.2d 411 (1952), as follows:
... It is significant that the later statute [Act 169 of 1940] does not require the adoption to be by authentic act or by an acknowledged private act, both of which are defined in the Civil Code and are required to be witnessed. When the legislature provided that the adoption should be by notarial act signed by the interested parties without defining the words "notarial act" and without providing that it be witnessed, it is evident that the legislature did not intend that the act should be executed in the presence of and signed by witnesses. ...
60 So.2d at 414. (Emphasis ours.)
After making the above distinction between "authentic act" and "notarial act," the Court, applying principles of statutory construction, continued as follows:
... Where the legislature deliberately amends an act or repeals an act and enacts a new statute changing the provisions of the prior statute by using words conveying a different meaning, the *216 courts are not authorized to ascribe a meaning at variance with the plain import of the language used as that would be exercising legislative functions and would in effect operate as a judicial repeal....; 2 Sutherland Statutory Construction, Lewis 2d Ed. 893, Section 476,... It is provided in Act 169 of 1940 "That no adoption by notarial act or by private act duly acknowledged of persons over the age of seventeen years, executed prior to the effective date of this act, shall hereafter be set aside, annulled or be declared to be null, void or ineffective." This indicates that the legislature intended to give effect to prior adoptions by notarial act. If it had intended to give effect only to adoption by authentic act or private act duly acknowledged, it would not have used the words "notarial act" but would have used the words "authentic act," etc., as set out in the prior statute.

... Since the legislature has seen fit to dispense with the requirement that the adoption be effected by authentic act or acknowledged private act, it is evident that they did so for a purpose and we cannot, in the absence of any statute defining a notarial act, say that the legislature intended for the act to be passed in the presence of and signed by witnesses.

60 So.2d at 414. (Emphasis ours.)
Act 169 of 1940, construed in Thomson, supra, became La.R.S. 9:461 which has been amended in 1952, 1978, 1983 and 1984, none of which amendments has ever defined the term "notarial act" which is still the method for effecting a Section 461 adoption. Therefore, the rationale and holding of Thomson are as valid today as when the case was decided.
Prior to the enactment of La.R.S. 9:422.3 through 422.12 in 1979, there was no statute comparable to it which prescribed the elements deemed essential to a valid act of surrender for private adoption. Statutes and jurisprudence did not require a written act of surrender as a prerequisite to establishing a basis for private adoption. Thus, manual delivery of the child by the natural parent or parents to the persons petitioning for adoption, combined with the favorable report of the Division of Family Services of DHHR, a state agency, and the continuing consent of the parent or parents until the rendition of an interlocutory decree of adoption, was a sufficient legal basis for a private adoption under La.R.S. 9:429 as it was phrased from 1960 until it was amended in 1979. In Lange v. Cole, 289 So.2d 304 (La.App. 1st Cir.1973), we reasoned, in rejecting appellant-birth mother's contention that the interlocutory decree was invalid because the notarial act of surrender, in which she gave her consent to the adoption, was not filed in the record prior to the entry of the decree, in part, as follows:
... The law does not set forth a specific method of obtaining consent of the natural parent to the adoption. Here the consent of Mrs. Lange comes directly from the fact that she told the Coles she wanted them to adopt the child and she signed the notarial act of consent. Consent may be inferred from the fact that she was personally served with the petition for adoption with the date of the hearing set forth therein, and she failed to appear to contest the matter. Consequently, the notarial act of consent is not necessary. ... Under these circumstances, the fact that the notarial consent... was not filed in the record is of no moment.
289 So.2d at 307. (Emphasis ours.)
We respectfully disagree with the language of our brethren of the Second Circuit Court of Appeal in In re CDT, supra, whether it be dictum, as we appreciate it, or the holding, that La.R.S. 9:422.3 through 422.13 has "provided for a specific and exclusive method by which private adoptions are to be carried out." 415 So.2d at 318. Such a result is incompatible with well settled principles of statutory construction, not the least of which is stated succinctly in § 47.02 of Sutherland's treatise on Statutory Construction, that "a legislature passes judgment upon the act as *217 an entity, not giving one portion of the act any greater authority than another."
Act 686 of 1979 amended La.R.S. 9:429 and added La.R.S. 9:422.3 through 422.12. Sections 422.3 through 422.12, while lacking consistency in labeling the act of surrender provided for in those sections, nevertheless, clearly requires an authentic act of surrender with its required components, enumerated as plainly as the nose on one's face, at least to the careful reader. Section 429, on the other hand, is couched in the language of "notarial act" and introduced a substantive requirement previously not in that section. The substantive change made in Section 429 is that the withdrawal of consent to a private adoption triggers a "best interest" hearing if the natural parent or parents evidenced their consent to adoption via notarial act of surrender and consent.
As stated in Sutherland on Statutory Construction, "the lawmaker has a definite purpose in every enactment and has adopted and formulated the subsidiary provisions in harmony with the purpose." § 46.05, 4th Edition. Had the legislature intended that Section 1 of Act 686 of 1979, enacting La.R.S. 9:422.3 through 422.12, was to provide the "exclusive method by which private adoptions are to be carried out," no useful purpose would have been served by Section 4 of Act 686 of 1979, which amended and reenacted La.R.S. 9:429 with the "best interest hearing," which affords a measure of protection to adoptive parents and the child, previously denied them by the jurisprudence.
We hold that an act, authentic in form but which does not contain all enumerated elements for a "fail-safe" act of surrender provided for by La.R.S. 9:422.3 through 422.14, can, nevertheless, suffice as a "notarial act" for the purposes of applying La.R.S. 9:429. The act of surrender in the present case formed the basis for the District Court's "best interest" hearing which elicited the testimony of the natural mother, her father and step-mother, and that of the adoptive parents and their witnesses, all relative to the past and present treatment of and provision for the infant. Without going into sordid, clinical details shown in the record, the infant suffered repeated acts of abuse at the hands of SRP's live-in boyfriend, a convicted narcotics peddler, in SRP's presence. The abuse, combined with the totality of SRP's past and present intra-familial environment was sufficient evidence for the Trial Judge to hold that the infant's best interests would not be served by returning the child to her natural mother. However, the court held, correctly, that RLV, et ux, overwhelmingly proved that the infant's best interests would be served by not disturbing their custody and by proceeding with the adoption. The favorable report on RLV, et ux, prepared by the Louisiana Department of Health and Human Resources (DHHR), combined with the Trial Judge's evaluation of the testimony of the parties and their witnesses, formed the basis of the Trial Judge's decision that the infant's best interests will be served by permitting RLV, et ux, to retain custody of and to adopt the child. We agree with his "best interest" holding.
For the foregoing reasons that interlocutory decree of adoption and the dismissal of SRP's Intervention and Opposition are affirmed. Appellant-Intervenor-Opponent, SRP, is cast for all costs of these proceedings in this court and in the court below.
AFFIRMED.